Hillsborough,
No. 5798.

STATE *v.* ANTHONY JAMES MONTEIRO.

January 30, 1970.

*George S. Pappagianis*, Attorney General and *G. Wells Anderson*, Assistant Attorney General ( *Mr. Anderson* orally ), for the State.

*F. Lee Bailey* and *Charles M. Burnim* ( of Massachusetts ) and *Robert L. Chiesa* ( *Mr. Bailey* and *Mr. Burnim* orally ), for the defendant.

PER CURIAM.   Defendant Anthony James Monteiro and Charles Powers were tried and convicted of robbery in violation of RSA 585:18.   Monteiro's exceptions were reserved and transferred by the Trial Court ( *Loughlin*, J. ).

On November 4, 1966 at  about 8 P. M. two men wearing stockings over their heads and carrying pistols entered the home of Mr. & Mrs. Emile Chagnon, a seventy-nine year old couple living at 23 Russell Avenue in Nashua. Mrs. Chagnon was pistol whipped and both she and Mr. Chagnon were tied up by the robbers. In addition to some money and a ring taken from Mr. Chagnon, the men took a full length mink coat valued at $4500, a brown persian lamb coat and a mink hat.

There was testimony from which a jury could find that sometime between 5:30 and 6:30 P. M. on Friday, November 4, 1966 defendants Monteiro and Powers went to the home of Janet  Moran in Lowell, Massachusetts to borrow an automobile from a Caroline Morse who was there. The car was a 1959 Oldsmobile convertible with a white body, black top and Massachusetts plates. Caroline Morse told Monteiro and Powers that she expected to be away from her own apartment all week-end. However, about 9 P. M. that night she went to her apartment to change her shoes and found on the bed in her bedroom some furs including a full length mink coat and a mink hat. She took the furs from the bed and threw them in a closet at which time a pistol fell out of the pocket of a coat of hers hanging there. Caroline took the pistol away with her and returned it to Powers on demand the next day. On that day she had seen a story about the robbery in the Lowell Sun and in her conversation with both defendants they admitted they were the participants and threatened her with reprisals if she talked.

The furs which Caroline had found in her apartment were gone on Monday when she returned. On November 7th or 8th Powers brought to the apartment of Jean Abernathy in Lowell a full

length mink coat, a brown fur jacket and a mink hat and asked to leave them there while he tried to sell them. About two weeks later he removed them and testified he did not know what happened to them. Jean Abernathy examined the furs while they were at her apartment and her description of them was similar to that of Mrs. Chagnon's. In addition she took from the pocket of one of the coats a handkerchief identified by Mrs. Chagnon as one she had purchased in Paris. She found a price tag in the mink hat in the amount of $49.98. Mrs. Chagnon testified that her mink hat was new with the price tag in it in an amount of forty-nine dollars and some cents.

A white convertible with a black top was seen parked about a block from the Chagnon home by two witnesses between 8 and 8:30 P. M. on November 4th. One witness recalled that it had Massachusetts plates on and was parked in front of a vacant lot.

Emile and Alice Chagnon identified on the stand Powers and Monteiro as the men who had robbed them. Douglas Plummer, a fourteen year old boy, identified Monteiro as one of two men he had seen come from some bushes in the vicinity of the Chagnon house carrying a peach basket which they took to a white convertible with a black top.

Both Monteiro and Powers took the stand and denied the commission of the crime.

The main thrust of defendant Monteiro's attack upon his conviction centers on the identifications of Mr. & Mrs. Chagnon and Douglas Plummer. We agree with both the State and the defendant that they are not precluded from raising this question here by failure to object at the trial as the defendant had no means of raising the present issue under the law then in effect. *State* v. *Nelson*, 105 N. H. 184, 190, 196 A. 2d 52.

Defendant Monteiro was arrested some six months after the robbery. Mr. & Mrs. Chagnon and Douglas were taken to the jail in Manchester where he was held and observed him in a line-up with two other prisoners, one about his height and the other shorter. Monteiro was dressed in slacks and a white shirt while the other two men were dressed in blue denims. The three witnesses were instructed to make no statements in front of the line-up and the three prisoners were instructed to give individually their names and addresses; then to face right, left and about face. After the prisoners had left, all three witnesses identified Monteiro and it appears they could hear each other's identification. About

two weeks later a similar line-up identification was conducted with Powers and at that time Douglas identified a person other than Powers. All three identified Monteiro on the stand.

On June 12, 1967 the Supreme Court of the United States decided that a line-up is a critical stage in prosecution and denial of right of counsel at a line-up renders identification inadmissible. *United States* v. *Wade*, 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; *Gilbert* v. *California*, 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951. *Stovall* v. *Denno*, 388 U. S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 decided that the *Wade* and *Gilbert* cases should have only prospective effect. Consequently we are not here concerned with a failure to provide counsel at the line-up.

*Stovall* v. *Denno, supra,* provided for an attack on identification evidence in pre-*Wade*-*Gilbert* cases if the line-up procedure was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." In such cases the "totality" of circumstances surrounding the identification is to be examined to determine whether due process is thus violated. This rule was restated in *Simmons* v. *United States*, 390 U. S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, although in both *Stovall* and *Simmons* the defendants were unsuccessful. In *Stovall* the defendant was taken to the hospital where he was identified by the badly injured victim. At the time of the identification he was the only negro in the room and handcuffed to a detective. The Court failed to find due process violated on the ground that the condition of the witness created a compelling urgency to determine whether the defendant was the man. In the *Simmons* case in-court identification based upon photographs with no line-up was held not to violate due process.

*Stovall* v. *Denno, supra,* cited only *Palmer* v. *Peyton,* 359 F. 2d 199 in support of the rule laid down. In *Palmer* v. *Peyton, ibid.,* the witness did not see the defendant in the confrontation and made her identification from his voice alone after having been told by the police that they had a suspect. She did not make an in court identification. *Biggers* v. *Tennessee,* 390 U. S. 404, 19 L. Ed. 2d 1267, 88 S. Ct. 979 was nearly on all fours with the *Palmer* case but an equally divided court refused to upset the conviction. There, seven months after being raped the victim was brought to the police station to "look at a suspect." The defendant alone was brought in and identified only after he had spoken at the request of the victim. She did not make an identification in court.

*Foster* v. *California,* 394 U. S. 440, 22 L. Ed. 2d 402, 89 S. Ct 1127 the latest pre- *Wade-Gilbert* case involved identification by a single witness who first failed to identify defendant in a line-up of three with the other two much shorter, then failed in a face to face confrontation and finally succeeded in a second line-up of six where defendant was the only one who had been present before. The Court held in a five to four decision that the totality of circumstances and the procedure "so undermined the reliability of the eyewitness identification as to violate due process." *Ibid.*

The above cases indicate that the determination of whether due process is violated is dependent upon an examination of all the evidence bearing upon the identification. In *Clemons* v. *United States,* 408 F. 2d 1230 a concurring opinion joined in by now Chief Justice *Burger* stated at pages 1250-251: "The mere fact that some 'unreliable' identification was received does not establish a denial of the due process right to a fair trial. The right is to be tested by assessing the totality of proof on the identification issue. The soundness of making a due process right depend on a review of evidence becomes clear when one focuses on the interests protected retroactively by the *Simmons-Stovall* due process right. Unlike the interests preserved by the guarantee of counsel or some of the other specific guarantees, the interests guarded by *Stovall* cannot so easily be factored out and assessed independently of the evidence."

The objections here center around certain deviations from recommended practice in the line-up. These were the use of only two persons besides the defendant, the fact that the two other men were dressed in different clothes than the defendant, and that the witnesses could hear each other's identifications. On the other hand there was no suggestion from the police, the witnesses were not limited to a single person and there was similarity of race and some of height. Lack of suggestion either from dissimilar dress, the police or the ability to hear identifications by others may be inferred from the misidentification made by Douglas at the second line-up with Powers conducted in the same manner.

All three witnesses were subjected to vigorous and extended cross-examination. The depositions of both Mr. & Mrs. Chagnon had been taken in preparation for trial and any discrepancies or deficiencies in their ability to describe defendant Monteiro were brought out in examination. Both Mr. & Mrs. Chagnon had observed the robbers at the time of the crime for about a half

an hour at distances in a lighted room of three feet or less. The ability to recognize a person through the possible distortion of the stockings was tested by counsel in the examination of Mrs. Chagnon. Three men dressed in stocking masks were brought in separately and she positively identified them individually when they returned together.

In addition, as bearing upon the correctness of the identification the jury could find from other evidence that the defendant was in the car used in the robbery that night and had admitted his participation to a witness. "Taken together, these circumstances leave little room for doubt that the identification . . . was correct, even though the identification procedure employed may have in some respects fallen short of the ideal." *Simmons* v. *United States*, *supra*, 385 - 386.

The defendent argues that the Trial Court did not sufficiently instruct the jury that admissions made by defendent Powers should not be used against defendent Monteiro. Since the Trial Court sua sponte during the trial and in his charge correctly instructed the jury, the argument is without merit.

During the course of his argument the prosecutor read certain testimony of the witness Caroline Morse after having first furnished copies to counsel of the testimony in accordance with Superior Court Rule 57. The purpose of the rule is to allow counsel an opportunity to check the accuracy of such testimony when read. It appears that the testimony was accurately quoted and discrepancies later brought out in cross-examination did not render it less so.

Examination of the record indicates that the Trial Court properly denied defendant's motions to set aside the verdict and for a new trial.

*Exceptions overruled.*

GRIMES, J. did not sit.