THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JOSEPH MUSTACCHIO, DEFENDANT-APPELLANT.

Argued October 14, 1970—Decided December 7, 1970.

*Mr. Kenneth J. McGuire* argued the cause for appellant (*Messrs. Stein, Bliablias & Goldman,* attorneys).

*Mr. George N. Pappas,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

The opinion of the court was delivered by

JACOBS, J. The Appellate Division, with one judge dissenting, affirmed the defendant Mustacchio's armed robbery conviction. 109 *N. J. Super.* 257 (1970). He appealed to this Court as of right under *R.* 2:2–1(a)(2). A codefendant, Anthony D'Agostino, was acquitted by the jury and is not now before us.

On April 4, 1967, two men entered David Goffman's pharmacy and committed an armed robbery. One of the men had a shotgun and the other kept his right hand in his pocket, leaving the impression that he also was armed. In addition to Goffman, a young man named William Bell was in the pharmacy's phone booth and witnessed the crime. While the man with the shotgun covered Goffman, the other man emptied the cash register and then accompanied Goffman to the rear of the store where he emptied a metal box containing cash. He then cut a telephone wire and left with his partner. The police were called and were given descriptions of the two holdup men. Goffman gave a description of the man who emptied the cash register and the

metal box, later identified as Mustacchio, but Bell, at that point, said he was unable to give a description though he would later look at some mug shots. Both Bell and Goffman gave descriptions of the man with the shotgun whom they later identified as D'Agostino.

On April 5, 1967, the day following the robbery, Goffman was shown a packet of photographs. He identified the defendant Mustacchio as the man who had taken the money from the register and the box. Bell was also shown the photographs, independently of the showing to Goffman, and while he picked Mustacchio as looking very much like one of the robbers, he wanted to withhold positive identification until he saw him in person. On April 7, 1967 there was a lineup at police headquarters of five men including Mustacchio. Goffman immediately identified Mustacchio as the robber who took the money. Thereafter Bell independently viewed the lineup and identified Mustacchio as the robber who had accompanied Goffman to the rear of his pharmacy. At the trial, both Goffman and Bell gave firm and positive identifications of Mustacchio as one of the two men who committed the armed robbery.

▆ The primary point advanced by Mustacchio in support of his appeal is that the pretrial identifications violated his constitutional rights. He stresses that he had no counsel at the lineup and he relies heavily on *United States v. Wade*, 388 *U. S.* 218, 87 *S. Ct.* 1926, 18 *L. Ed.* 2d 1149 (1967). *See also Gilbert v. California*, 388 *U. S.* 263, 87 *S. Ct.* 1951, 18 *L. Ed.* 2d 1178 (1967). There the Supreme Court held that a postindictment lineup without notice to the accused's appointed counsel was illegal, that the admission of a later in-court identification was erroneous unless it had a sufficient untainted independent origin, and that if the in-court identification had no such origin its admission was cause for reversal unless shown to have been harmless. Here Mustacchio's lineup occurred while the investigation was still under way prior to indictment and differing views have been expressed as to the applicability of

*Wade* to such preindictment situations. *Compare People v. Palmer,* 41 *Ill.* 2d 571, 244 *N. E.* 2d 173 (1969) *with People v. Fowler,* 1 *Cal.* 3d 335, 82 *Cal. Rptr.* 363, 461 *P.* 2d 643 (1969); *Joyner v. State,* 7 *Md. App.* 692, 257 *A.* 2d 444 (*Ct. Sp. App.* 1969); *Hayes v. State,* 46 *Wis.* 2d 93, 175 *N. W.* 2d 625 (1970); *Commonwealth v. Whiting,* 439 *Pa.* 205, 266 *A.* 2d 738, *cert. denied,* 400 *U. S.* 919, 91 *S. Ct.* 173, 27 *L. Ed.* 2d 159 (1970). *See State v. Sinclair, et al.,* 49 *N. J.* 525, 545 fn. 1 (1967); *State v. Matlack,* 49 *N. J.* 491, 499 fn. 1, *cert. denied,* 389 *U. S.* 1009, 88 *S. Ct.* 572, 19 *L. Ed.* 2d 606 (1967). *State v. Moore,* 111 *N. J. Super.* 528, 532 (*App. Div.*), *certif. denied,* 57 *N. J.* 210, 271 *A.* 2d 5 (1970); *State v. Edge,* 111 *N. J. Super.* 182, 187 (*App. Div.* 1970), appeal pending in this Court, September Term 1970; *State v. Thomas,* 107 *N. J. Super.* 128, 134 (*App. Div.* 1969); Notes, 36 *U. Chi. L. Rev.* 830, 835 (1969); 47 *Neb. L. Rev.* 740, 747 (1968).

We need not pursue the foregoing inquiry since the lineup here admittedly took place before *Wade* was decided on June 12, 1967. In *Stovall v. Denno,* 388 *U. S.* 293, 87 *S. Ct.* 1967, 18 *L. Ed.* 2d 1199 (1967) the Supreme Court held that the requirement of counsel at a lineup, as mandated by *Wade,* would not be applied retroactively to lineups conducted before the opinion in *Wade* was handed down. Mustacchio's counsel suggests that even though we are not obliged by any decision of the Supreme Court to apply *Wade* to the case at hand we should do so on our own. *Wade* imposed a requirement which was foreign to the New Jersey precedents and our courts have consistently declined to apply it to pre-*Wade* lineups (*State v. Sinclair,* 57 *N. J.* 56, 67 fn. 1 (1970); *State v. Sinclair, et al., supra,* 49 *N. J.* 525; *State v. Matlack, supra,* 49 *N. J.* 491); we find nothing in Mustacchio's case which would fairly call for an exceptional approach. Nor do we find any basis for his suggestion that, even apart from *Wade,* he was entitled to counsel at the lineup under the holdings in *Miranda v. Arizona,* 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d 694

(1966) and *Escobedo v. Illinois,* 378 *U. S.* 478, 84 *S. Ct.* 1758, 12 *L. Ed. 2d* 977 (1964). Those cases dealt with custodial interrogation, particularly the admissibility of incriminating statements made during such interrogation, which is not at all our concern here. *Cf. State v. King,* 44 *N. J.* 346, 356–358 (1965); *United States v. Wade, supra,* 388 *U. S.* at 221–224, 87 *S. Ct.* 1926, 18 *L. Ed. 2d* at 1154–1155.

█ █ The defendant also contends that he was denied due process in the pretrial identifications and cites *Simmons v. United States,* 390 *U. S.* 377, 88 *S. Ct.* 967, 19 *L. Ed. 2d* 1247 (1968) and *Foster v. California,* 394 *U. S.* 440, 89 *S. Ct.* 1127, 22 *L. Ed. 2d* 402 (1969) which, in turn, applied the principles enunciated in *Stovall v. Denno, supra,* 388 *U. S.* 293, 87 *S. Ct.* 1967, 18 *L. Ed. 2d* 1199. In *Stovall* the accused was brought handcuffed to a hospital room where he was identified by the victim. The identification occurred before *Wade* and the question raised by the defendant was whether the confrontation "was so unnecessarily suggestive and conducive to irreparable mistaken identification" as to amount to a denial of due process. In passing on this issue the Court noted that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, * * *." 388 *U. S.* at 302, 87 S. Ct. at 1972, 18 *L. Ed. 2d* at 1206. It found no constitutional violation, pointing out that an immediate hospital confrontation was imperative and that "the police followed the only feasible procedure" in taking the defendant to the hospital room. *Cf. State v. Simmons,* 52 *N. J.* 538, 542–543 (1968), *cert. denied,* 395 *U. S.* 924, 89 *S. Ct.* 1779, 23 *L. Ed. 2d* 241 (1969).

In *Simmons v. United States, supra,* there was an armed robbery of a federally insured savings and loan association. The F. B. I. had inconclusive clues which led to Andrews and Simmons. They showed snapshots of Andrews and Simmons to savings and loan employees who at that time identified Simmons and also later identified him in court. They did not identify Andrews. The Court held that there

had been no denial of due process. It refused to prohibit all use of initial identification by photograph, stating that each case must be considered on its own facts and "that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 *U. S.* at 384, 88 *S. Ct.* at 971, 19 *L. Ed. 2d* at 1253.

In *Foster v. California, supra,* the Court, with four justices dissenting, did find that there had been an unnecessarily suggestive lineup in violation of due process. But there the defendant, a tall man dressed in a jacket similar to that worn by the robber, was placed in a three-man lineup with two short men not wearing similar jackets. Even then the victim could not positively identify the defendant nor could he do so in a one-to-one confrontation. Later, there was a second lineup in which the defendant was the only one who had also appeared in the first lineup and, in the language of Justice Fortas, this "finally produced a definite identification." 394 *U. S.* at 443, 89 *S. Ct.* 1127, 22 *L. Ed. 2d* at 407. The particular circumstances in *Foster* readily distinguish it from the matter at hand and from the many instances in which our courts have found confrontations in lineups and elsewhere to have been conducted fairly and without unnecessary suggestiveness in violation of due process. *See State v. Sinclair, supra,* 57 *N. J.* 56; s. c., 49 *N. J.* 525; *State v. Simmons, supra,* 52 *N. J.* 538; *State v. Matlack, supra,* 49 *N. J.* 491; *State v. Thomas, supra,* 107 *N. J. Super.* 128; *State v. Mars,* 107 *N. J. Super.* 36 (*App. Div.* 1969), *certif. denied,* 55 *N. J.* 319 (1970).

During the trial, Goffman was about to testify with respect to his pretrial identifications when Mustacchio's counsel objected and stated that he wanted to be heard "in terms of *United States v. Wade.*" He asked the court to review the circumstances surrounding the pretrial identifications "in a hearing out of the presence of the jury." The trial court

understood from counsel's argument that he was relying entirely on *Wade* which dealt only with the right to counsel under the sixth amendment and not with any due process right under the fourteenth amendment. Since this was a pre-*Wade* case, counsel was not a requisite and the trial court declined to conduct the requested hearing; we have little doubt that, if a due process contention had been clearly raised, the trial court would have followed the normal procedure of taking testimony out of the jury's presence as to whether there was such unnecessary suggestiveness in the pretrial identifications as to taint any in-court identification and deprive the defendant of his constitutional rights. *See State v. Mars, supra,* 107 *N. J. Super.* at 38; *State v. Thomas, supra,* 107 *N. J. Super.* at 135; *cf. State v. Woodard,* 102 *N. J. Super.* 419 (*App. Div.*), *certif. denied,* 53 *N. J.* 64 (1968), *cert. denied,* 395 *U. S.* 938, 89 *S. Ct.* 2003, 23 *L. Ed. 2d* 453 (1969).

The majority in the Appellate Division held that the record did not support the defendant's present claim that he had, during the trial, raised the due process issue by an appropriate request for a court hearing regarding the fairness of the totality of the circumstances surrounding the pretrial identifications. 109 *N. J. Super.* at 262. A dissenting judge expressed the view that, notwithstanding obscurities in the record, the issue should be deemed to have been sufficiently raised at the trial and he voted to remand the matter for a finding by the trial court as to whether there was unfairness in the pretrial identification procedure; he agreed that if there was no such unfairness or no ensuing taint the conviction must stand. 109 *N. J. Super.* at 270. Assuming, for present purposes, that the issue was sufficiently raised at trial, we are nonetheless satisfied that no remand is called for. The record before us is a complete one including testimony by Goffman, Bell, police officers and the defendant himself, and during oral argument, defense counsel acknowledged that he had no supplemental evidence in his possession or under his command which would add anything relevant

to the issue. Under the circumstances we may justly make our own independent finding; a thorough examination of the record convinces us that the pretrial identifications were not unfair or unnecessarily suggestive or violative of any of the defendant's constitutional rights. *Cf. State v. Thomas, supra,* 107 *N. J. Super.* at 135; *State v. Woodard, supra,* 102 *N. J. Super.* at 425–426; *see Stovall v. Denno, supra,* 388 *U. S.* at 301–303, 87 *S. Ct.* 1967, 18 *L. Ed. 2d* at 1206.

Goffman had excellent opportunity to observe the man in the pharmacy who took the contents of the cash register and the metal box. When on the following day he was shown a packet of photographs he identified Mustacchio. It is true, as counsel points out, that the packet contained front and side views of Mustacchio on separate prints whereas front and side views of others in the packet were on a single print. But this may hardly be considered significant, particularly in the light of Goffman's testimony that he was not shown the defendant's pictures either first or separately but that all of the pictures were spread out in front of him and he thereupon identified the defendant. *See United States v. Cunningham,* 423 *F. 2d* 1269, 1272 (4 *Cir.* 1970); *State v. Rowe, Wash.,* 468 *P. 2d* 1000, 1001–1002 (1970); *Commonwealth v. Geraway,* 355 *Mass.* 433, 245 *N. E. 2d* 423, 428, *cert. denied,* 396 *U. S.* 911, 90 *S. Ct.* 226, 24 *L. Ed. 2d* 186 (1969).

Two days later there was a lineup at police headquarters of five men including Mustacchio. Goffman unhesitatingly identified the defendant. Counsel attacks the lineup largely on the basis of Mustacchio's testimony that the others were clean shaven and wore jackets and ties whereas he wore a T-shirt and sweater and was unshaven. But Goffman testified that he could not remember how the others were dressed or how they looked, for when he first saw the defendant in the lineup "he stood out" in Goffman's eyes as the man who had emptied the register and box. *Cf. Coleman v. Alabama,* 399 *U. S.* 1, 90 *S. Ct.* 1999, 26 *L. Ed. 2d* 387, 394–395 (1970). Bell, who independently identified the defendant

from the same lineup of five men, described the other men as being "about the same height and same build" with the same "racial characteristics" as the defendant.

Detective Appleton of the Bloomfield Police Department testified fully as to the lineup. He identified, by name and occupation, each of the other four participants in the lineup. On cross-examination by Mustacchio's counsel, he listed them as Anthony Rena, John Scheuten, Edward Roccell and Edward Mansaio. When counsel asked how tall Rena was, the detective replied, "I'd say he is about five ten or five feet eleven, well built, black hair, he has a good head of hair"; and in response to an inquiry as to Rena's weight he replied, "I'd say approximately between 180 and 190 pounds." Counsel did not pursue any inquiries on cross-examination as to the physical characteristics of the remaining participants in the lineup nor did he seek to call any of them as witnesses.

Mustacchio denied generally that the other men in the lineup "looked or came close" to his makeup but he specifically described one of them (Mansaio) as about five feet eight, medium build with dark hair and light complexion. Describing himself, Mustacchio testified that he was five feet eight in height, weighed about 200–210 pounds and had dark brown hair. He also testified that at the time of the lineup he had a black eye which was the result of an accident five days earlier. He produced testimony by a physician who treated him for the eye injury along with an accompanying injury to his right hand. But the physician, upon being shown a picture of Mustacchio, acknowledged that it accurately portrayed Mustacchio's appearance when he was in the physician's office on April 6, two days after the robbery. That picture was introduced in evidence and the jury could readily find from it that there was little if any remaining evidence of a black eye.

The record indicates that Detective Appleton conscientiously sought to have a lineup which could enable a true and honest identification. We find no unnecessary sugges-

tiveness nor do we find any fatal infirmity in the variations in clothing or in makeup. *See People v. Floyd,* 1 *Cal.* 3d 694, 83 *Cal. Rptr.* 608, 464 *P.* 2d 64, 76 (1970) ; *State v. Monteiro, N. H.,* 261 *A.* 2d 269, 272 (1970). The lineup was arranged fairly and with due regard for the interests of the defendant. The identification by Goffman and Bell were made independently and without police pointers. Viewed in their totality, the circumstances here surrounding the identifications satisfied due process, indeed more clearly so than in many cases which have upheld one-to-one confrontations and ensuing identifications. *See United States v. Shannon,* 424 *F.* 2d 476 (3 *Cir.* 1970) ; *United States ex rel. Williams v. LaVallee,* 415 *F.* 2d 643 (2 *Cir.* 1969) ; *United States ex rel. Rutherford v. Deegan,* 406 *F.* 2d 217 (2 *Cir.*), *cert. denied,* 395 *U. S.* 983, 89 *S. Ct.* 2145, 23 *L. Ed.* 2d 771 (1969) ; *cf. State v. Simmons, supra,* 52 *N. J.* at 542–543 ; *State v. Matlack, supra,* 49 *N. J.* at 498 ; *State v. Sinclair, et al., supra,* 49 *N. J.* at 545 ; *State v. Thomas, supra,* 107 *N. J. Super.* at 131–133.

At the trial Goffman and Bell firmly and unequivocally identified the defendant Mustacchio as one of the robbers. The jury accepted the verity of their identifications despite the testimony of the defendant and his friendly alibi witnesses which it discredited. Under our system of criminal justice, that was its allotted responsibility and though the trial judge had the power to grant a new trial "if required in the interest of justice" (*R.* 3 :20–1), he denied the defendant's application for such relief. On appeal, the Appellate Division found no just basis for interfering with the defendant's conviction (*R.* 2 :10) and although, as we have already pointed out, one judge considered that there should have been a remand for a further court finding, we have made the finding and no remand is necessary. In the Appellate Division the defendant raised several additional points of alleged legal error which were summarily rejected by all members of that court. 109 *N. J. Super.* at 263–264. The points have been reasserted before us and we shall

deal with them briefly in the order of their presentation by the defendant.

The defendant complains about the denial of his motion for mistrial grounded on an incident which occurred at a luncheon recess during the course of the trial. Counsel for Mustacchio stated that during the recess he overheard police officers compliment Goffman on his testimony. There were three jurors nearby but they did not overhear any of the conversation between the officers and Goffman. This was ascertained by the trial judge who carefully interrogated each of the three jurors in his chambers. Two of them stated that they did not hear any conversation or even see the police officers talking with Goffman. The third stated that she saw the officers talking with Goffman but did not hear any part of their conversation. The trial judge was entirely satisfied that no harm had been done and that the motion for mistrial should be denied. His action was clearly within the proper exercise of his discretionary powers. *See State v. DiRienzo,* 53 *N. J.* 360, 383 (1969) ; *State v. Witte,* 13 *N. J.* 598, 611–613 (1953), *cert. denied,* 347 *U. S.* 951, 74 *S. Ct.* 675, 98 *L. Ed.* 1097 (1954) ; *State v. Buffa,* 51 *N. J. Super.* 218, 238 *(App. Div.* 1958), *aff'd,* 31 *N. J.* 378, *cert. denied,* 364 *U. S.* 916, 81 *S. Ct.* 279, 5 *L. Ed. 2d* 228 (1960).

The defendant made a further motion for mistrial because the prosecutor asked a defense witness whether he had ever been convicted of crime and, upon receiving a negative answer, acknowledged to the trial court that he had no proof of any conviction. The trial court denied the motion but immediately and forcefully told the jury that the question should not have been asked, that no adverse inference was to be drawn from it, that so far as appeared there was no prior conviction, and that the jury should in its deliberations be guided accordingly. The Appellate Division held that the trial court's clear and expeditious instructions "adequately neutralized" any impropriety on the prosecutor's part and we concur. 109 *N. J. Super.* at 263.

The New Jersey statutes provide that a prior conviction of crime may be introduced to affect the credibility of any witness. *N. J. S. A.* 2A:81–12; *State v. Hawthorne,* 49 *N. J.* 130 (1967). In *People v. Perez,* 58 *Cal. 2d* 229, 23 *Cal. Rptr.* 569, 373 *P. 2d* 617 (1962), the California Supreme Court held that it was improper for a prosecutor to ask a witness whether he had been convicted of crime where the prosecution was in no position to dispute a negative answer by the witness. 23 *Cal. Rptr.* at 575, 373 *P. 2d* at 621–622; *see also State v. Gustafson,* 248 *Or.* 1, 432 *P. 2d* 323, 325 (1967); *Annot.,* 3 *A. L. R.* 3d 965 (1965). However, in the more recent California case of *People v. Foster,* 271 *Cal. App. 2d* 763, 76 *Cal. Rptr.* 775 (1969), Justice Dunn expressed the thought that it is harmless to ask a witness blandly if he has been convicted of crime, that a witness is not stigmatized in the eyes of the jury if his answer is in the negative, and that it is illogical to require that the prosecution conduct an extrajudicial investigation of "prior convictions of each defense witness when there may have been no opportunity to do so." 76 *Cal. Rptr.* at 779; *see also People v. Hall,* 5 *Cal. App. 3d* 116, 85 *Cal. Rptr.* 188, 193 (1970).

That New Jersey's approach is akin to the later California cases is quite apparent from the express terms of our statute (*N. J. S. A.* 2A:81–12) and the opinions of this Court which have applied them. *See State v. Hawthorne, supra,* 49 *N. J.* 130; *State v. Tune,* 17 *N. J.* 100 (1954), *cert. denied,* 349 *U. S.* 907, 75 *S. Ct.* 584, 99 *L. Ed.* 1243 (1955). Thus the statute provides broadly that the credibility of "any witness" may be attacked by showing through cross "examination or otherwise" that he has been convicted "of any crime." In *Hawthorne* this Court held that a showing of conviction of crime is to be permitted regardless of its nature or the time of its entry. 49 *N. J.* at 140–141. And in *Tune* this Court held that the cross-examiner need not "have in his possession the record of a prior conviction or

knowledge thereof" although in such event he may be bound by a negative answer from the witness. 17 *N. J.* at 111.

The defendant relies upon *State v. Cooper,* 10 *N. J.* 532 (1952) and *State v. Greely,* 11 *N. J.* 485 (1953) but they do not support him. Both cases set forth the clear moral and ethical precept that a prosecutor may not ask a witness as to prior convictions "if in fact he has knowledge that no such convictions exist" (10 *N. J.* at 555–556; 11 *N. J.* at 493); but neither case indicated that a prosecutor might not, as suggested in *People v. Foster, supra,* 271 *Cal. App.* 2d 763, 76 *Cal. Rptr.* 775, simply ask a witness whether he has been convicted of crime where the prosecutor has had no fair opportunity to look into the matter and in good faith believes that the witness may have a criminal record. What we have said should of course not be taken as encouraging such inquiry. In the first place, our broadened rules of discovery in criminal cases (*R.* 3:13; *State v. Montague,* 55 *N. J.* 387, 394–396 (1969)) should reduce the situations in which the prosecutor may be confronted with surprise witnesses. Secondly, even when he is confronted with a surprise witness he may still appropriately choose to withhold any questioning about prior convictions, for a negative answer may bind him (*Tune, supra,* 17 *N. J.* at 111), and even an answer which appears affirmative in tone may be confusing and lead to a claim of prejudice (*Hall, supra,* 5 *Cal. App. 3d* 116, 85 *Cal. Rptr.* at 193). However, the matter need not be discussed further in the case at hand for, as indicated earlier, the trial court's strong instructions effectively removed any possibility of prejudice to the defendant.

██ The defendant complains that he was unduly restricted in his cross-examination of two of the State's witnesses, Detectives Appleton and Chiarello. Appleton testified on direct as to the April 7 lineup and was cross-examined fully on that subject. In addition, counsel sought to extend the cross-examination to the photographs which had been shown to Goffman and Bell on April 5. The trial

court ruled this improper as beyond the scope of the direct. Counsel acknowledged that his proposed cross-examination was beyond the direct but stated that he wanted to show what moved Appleton to select and include the particular photographs in the packet shown to Goffman and Bell. The trial judge considered that this would be immaterial and reiterated his earlier ruling. When Chiarello was on the witness stand he testified on direct with respect to his observations in Goffman's pharmacy on the night of the robbery and also with respect to an April 10 lineup which included D'Agostino but not Mustacchio. During cross-examination, counsel sought to ask him about other drugstore holdups in Bloomfield both prior and subsequent to the Goffman pharmacy holdup on April 4. This was considered by the trial judge to be irrelevant and was in any event beyond the direct. We find no reversible error in the actions complained about. *See* 109 *N. J. Super.* at 264; *State v. Roscus,* 16 *N. J.* 415, 424 (1954); *Rivera v. Grill,* 65 *N. J. Super.* 253, 258–259 *(App. Div.)*, *certif. denied,* 34 *N. J.* 471 (1961).

■ The final point raised by the defendant is that he "was denied due process of law and was compelled to be a witness against himself by the admission into evidence of his prior convictions." The defendant voluntarily took the witness stand and was asked, during cross-examination, whether he had ever been convicted of a crime. He responded that he had been convicted of breaking and entering, conspiracy to commit grand larceny and uttering a forged instrument. Under *N. J. S. A.* 2A:81–12 the evidence as to his prior convictions was properly admitted to attack his credibility. This course did not deprive him of the due process guaranteed under the fourteenth amendment nor did it compel him to be a witness against himself in violation of the fifth amendment. *See State v. Garvin,* 44 *N. J.* 268 (1965); *State v. Brown,* 41 *N. J.* 590, *cert. denied,* 377 *U. S.* 981, 84 *S. Ct.* 1888, 12 *L. Ed. 2d* 749 (1964); *cf. State v. Sinclair, supra,* 57 *N. J.* at 62–64.

■ The fact that the jury acquitted D'Agostino has no bearing on any of the legal issues raised nor on the guilt of the defendant Mustacchio. The jury was at liberty to credit D'Agostino's witnesses while failing to credit Mustacchio's witnesses. There is nothing inconsistent in the verdict which represented the jury's finding that the State had established guilt beyond reasonable doubt as to Mustacchio but had failed to do so as to D'Agostino. *See Kamanosuke Yuge v. United States,* 127 *F.* 2d 683, 691 (9 *Cir.*), *cert. denied,* sub nom. *Mateus v. United States,* 317 *U. S.* 648, 63 *S. Ct.* 43, 87 *L. Ed.* 522 (1942); *Odom v. United States,* 377 *F.* 2d 853, 857 (5 *Cir.* 1967), *cert. granted on unrelated issue,* 399 *U. S.* 904, 90 *S. Ct.* 2203, 26 *L. Ed.* 2d 559 (1970); *United States v. Malfetti,* 125 *F. Supp.* 27, 30–31 (*D. N. J.* 1954); *cf. State v. Coleman,* 46 *N. J.* 16, 42 (1965), *cert. denied,* 383 *U. S.* 950, 86 *S. Ct.* 1210, 16 *L. Ed.* 2d 212 (1966); *Annot.,* 22 *A. L. R.* 3d 717, 723 (1968). Nor is there anything to support the contention that the verdict of guilt as to Mustacchio was against the weight of the evidence or that there was a denial of justice within *R.* 2:10–1 or its predecessors. *See State v. Williams,* 39 *N. J.* 471, 489–490, *cert. denied,* 374 *U. S.* 855, 83 *S. Ct.* 1924, 10 *L. Ed.* 2d 1075 (1963), 382 *U. S.* 964, 86 *S. Ct.* 449, 15 *L. Ed.* 2d 366 (1965); *State v. Balles,* 47 *N. J.* 331, 337–338 (1966), *appeal dismissed, cert. denied,* 388 *U. S.* 461, 87 *S. Ct.* 2120, 18 *L. Ed.* 2d 1321 (1967).

Affirmed.

FRANCIS, J. (concurring). I concur in the result reached in the majority opinion of the Court. However, I feel obliged to disagree with the portion thereof which discusses the propriety of the question put by the prosecutor to an important defense witness as to whether he had ever been convicted of crime. As the opinion notes, when the witness gave a negative answer the prosecutor acknowledged that he made the inquiry without any proof in his possession or any knowledge that the witness ever had been convicted of crime. This

admission was followed by defendant's motion for a mistrial which the trial court denied. That denial is being sustained by our Court because the trial court immediately and explicitly told the jury the question should not have been asked and that no adverse inference was to be drawn from it. The instruction, it is said, adequately neutralized any impropriety on the prosecutor's part. Under the circumstances of this case, I agree that the record presented to us does not show sufficient prejudice to warrant a reversal of the conviction.

The difficulty I have with the opinion is that it does not unqualifiedly declare that the question put by the prosecutor is improper and should not be asked on cross-examination of a party or a witness unless the interrogator has evidence available to show a conviction of crime, if such a conviction is denied. My colleagues hold that the question is not improper in the sense that an objection thereto must be sustained, if the prosecutor "has had no fair opportunity to look into the matter and in good faith believes that the witness may have a criminal record." The only exception noted is that the question may not be asked if the prosecutor in fact "has knowledge that no such convictions exist."

Overall the view expounded in the opinion is that if the witness denies that he has ever been convicted of crime and the questioner has no proof to the contrary, no harm is done so long as the trial judge gives the jury a neutralizing instruction. The suggestion is that it is harmless to ask a witness "blandly" if he has been convicted of crime and that he is not stigmatized in the eyes of the jury if his answer is in the negative. But can anyone tell from a cold record on appeal whether the question was put "blandly"? The question can be put with the thunder of Thor, or with seductive Circean charm, or with the insidiousness of a Iago, and its words will look the same on paper.

If, on the other hand, the answer to the question is in the affirmative, my colleagues infer that the end justified the means. If, as the Court says, the witness suffers no stigma

when his answer is in the negative, it follows from his "yes" answer that an immediate stigma is visited upon him. And therein lies the trouble and the danger of unjust prejudice. If the examiner does not pursue the matter further, as probably would be the case, ordinarily his adversary could not afford to remain silent on redirect examination, if he had no knowledge of any criminal conviction. Certainly, if he knew that any so-called conviction was for some petty or disorderly person offense, or traffic offense or the like, or even a juvenile delinquency adjudication, he would feel obliged to engage in further questioning to explain the admission of the witness that he had been convicted of crime. Even after it has been shown laboriously that the witness's conviction or convictions were disorderly person or petty offenses, which have no place in a fair trial, and which a juror or jurors may not regard as petty, I have serious doubt that a neutralizing instruction by the trial judge can undo the damage.

We know that most laymen are not aware of which infractions are crimes and which are disorderly person offenses or even more trivial aberrations from lawful conduct. Our experiences, either as trial or appellate judges, have shown us that frequently witnesses admit to criminal convictions when the infractions are not crimes. That is unfortunate and inconsistent with the true administration of criminal justice. Moreover, except in rare circumstances, the situation is avoidable. In these days of modern investigatory and discovery techniques, both the prosecutor and defense counsel are generally aware in advance of the trial of the names and addresses of persons who may appear as witnesses, and have the opportunity, particularly the prosecutor, of ascertaining if any of them have criminal records. See *e. g. R.* 3:13–3(c), (d) and (i); 3:11–1. In my judgment, the danger of prejudice and discredit arising from such admissions so far outweighs any procedural privilege on the part of either the prosecutor or defense counsel to engage in speculative and baseless questioning about possible conviction of crime, that

the inquiry should be prohibited. *Cf. New Jersey Rules of Evidence, Rule* 4.

The applicable statute authorizing proof of conviction of crime to affect the credibility of the defendant or a witness specifies that it may be done by examination or by production of the record of the conviction. *N. J. S. A.* 2A:81–12. It seems to me that the serious damage to the credibility of a witness which so frequently follows in the wake of proof of previous conviction of crime requires that the enactment be strictly construed and applied, and that the courts should take pains to see that it is not misused, consciously or unconsciously. On that basis, fairness in application thereof requires the assumption that when the Legislature spoke of proving the conviction by examination or production of the record it contemplated that the matter would not be inquired into unless the questioner had proof that such a conviction actually existed. In other words, the implication to be drawn from the whole statute is that the intention was to require the questioner to be prepared to prove the conviction by competent evidence, if the witness denied a conviction, and that the inquiry should not be made unless such proof was at hand. Existence of good faith in asking the question about previous conviction of crime should be tested by a single criterion: Was there a conviction of that nature, and was the examiner prepared to prove it when he asked the question. See *People v. Perez,* 58 *Cal.* 2d 229, 23 *Cal. Rptr.* 569, 373 *P.* 2d 617 (1962).

The Supreme Court of California in *People v. Perez* dealt with the issue now facing us. There the prosecutor asked a defense witness on cross-examination: "Have you been convicted of a felony?" The witness answered in the negative, whereupon defense counsel moved for a mistrial and to cite the prosecutor for misconduct "if he has no proof of a felony." The trial judge denied the motion, suggested that the question had been put in good faith and that "I don't see how you can prejudge his question at this time." The appellate court in commenting on this state-

ment said: "The latter remark correctly indicated that the determination concerning the requisite good faith on the part of the interrogator may not be made until it is known whether the questioner possesses proof of the prior felony conviction about which inquiry was made of the witness." 23 *Cal. Rptr.* at 574, 373 *P.* 2d at 622, n. 2.[1] At any rate, the prosecutor did not at any time during the trial offer proof of a prior felony conviction against the witness. The Supreme Court declared that in the absence of an intention to prove and evidence to prove the conviction, the question was improper. The view expressed there, and in the substantial number of concordant cases cited in the opinion, in my judgment is sound and necessary to the fair administration of the criminal law.

For the reasons set forth, interrogation of the defendant or witnesses for either party as to previous conviction of crime ought to be barred unless the interrogator has evidence in his possession to prove the fact, if the witness gives a negative answer.

Justice PROCTOR joins in this concurring opinion.

FRANCIS and PROCTOR, J. J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—NONE.

---

[1] If the prosecutor has any doubt as to whether the evidence in his possession or which may appear at the trial is sufficient to prove a previous conviction, there is no reason why he cannot settle the matter prior to trial or at least before the question is posed, at a side bar conference or at a time when the jury is not present.