396 A.2d 726

**COMMONWEALTH of Pennsylvania**

**v.**

**Byron JOHNSON a/k/a Byron Jones, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided Dec. 29, 1978.

Petition for Allowance of Appeal Denied May 1, 1979.

Oscar N. Gaskins, Philadelphia, for appellant.

Michael R. Stiles, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

Following a jury trial commenced on December 8, 1976, appellant was convicted of criminal conspiracy,[1] robbery,[2] and aggravated assault.[3]  Subsequent to a denial of post-verdict motions, appellant was sentenced to a prison term of from one to ten years for robbery, and to concurrent one to five year terms for aggravated assault and criminal conspiracy.  Appellant now contends that a new trial is necessitated by two lower court errors: (1) failing to grant a mistrial after the prosecutor had cross-examined appellant concerning a juvenile arrest for which no substantiation was produced;  and (2) allowing the complaining witness to resume the witness stand as of rebuttal for purposes of clarifying his

1.  18 Pa.C.S. § 903.

2.  18 Pa.C.S. § 3701.

3.  18 Pa.C.S. § 2702.

prior testimony. Finding no merit in these arguments, we affirm.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. Burton,* 450 Pa. 532, 301 A.2d 599 (1973), the following facts were adduced at trial. On July 14, 1976, Michael Johnson gave a revolver to Roger Jones (Roger), a member of a neighborhood gang that perpetrated small thefts in the area. Subsequently, having failed to receive his share of the proceeds from the sale of a recently stolen citizens band radio, Roger sold the gun on July 18, 1976, in an attempt to gain compensation.

Three days later, on July 21, Roger was told by Craig Jones and Barry Adams that appellant's mother wished to see him at her home. Later that same day, Roger visited the premises accompanied by Craig Jones. Upon entering the home, the latter procured a rifle and pointed it at Roger. They were soon joined by Michael Johnson, who pointed another gun at Roger, and both then forced him into the basement. In the interim, Barry Adams brought Charles Jones, Roger's cousin, to the house and he was similarly forced at gunpoint into the basement. Both Roger and his cousin were severely beaten while being questioned about the gun Michael Johnson had given Roger. Upon appellant's arrival some one-half hour later, he interrogated both of the captives about the gun, and after receiving unsatisfactory answers, proceeded to beat Roger about the head and body with the butt of a shotgun. He was aided in this assault by Barry Adams and Craig Jones. Finally, Roger revealed that the gun was at a girl's home and he was forced to telephone her. Following the girl's arrival, appellant threatened Roger with death if he should inform the police of the incident. Prior to his release, thirty-three dollars was taken from him. The entire episode lasted from two to three hours. After phoning the police, Roger was taken to St. Agnes Hospital for two weeks of care. Appellant was subsequently arrested on information provided by Roger.

Appellant's first contention concerns questions propounded on cross-examination by the assistant district attorney which implied that appellant had previously been arrested. The circumstances are these. On direct examination by his attorney, appellant testified that he had never been arrested, either as an adult or otherwise. Immediately thereafter, the following exchange took place on cross-examination:

"Q. [ASSISTANT DISTRICT ATTORNEY] Your attorney asked you whether you were arrested as a juvenile or otherwise?

A. [APPELLANT] Right.

Q. Do you remember that question?

A. Right.

Q. And I believe your answer was 'no'?

A. Right.

Q. Do you want to think about that answer?

A. Right. I never been arrested before in my life, never.

Q. Were you ever arrested in 1970?

A. 1970? For what?

Q. And charged with aggravated assault and simple assault?

A. No, not that I could remember, no.

[Sidebar discussion]

.   .   .   .   .

Q. It's your testimony that you were never arrested in the year of 1970?

A. No, not that I can remember.

Q. Now you have qualified it a little bit, haven't you?

A. Qualified what?

Q. By saying not that you remember?

A. No, not that I remember. No, I haven't been arrested . . .."

N.T. 361–63.

At sidebar, the prosecutor for the Commonwealth indicated that he possessed information indicating that appellant had been arrested for aggravated and simple assault as a juvenile in 1970. At the insistence of appellant's counsel,

he promised to bring the arresting officer to court the next day to substantiate his contention. In fact, neither the officer nor any records indicating an arrest were ever produced,[4] and appellant's counsel at that time requested a mistrial. Prior to a ruling on the motion, however, appellant's counsel agreed that the court could proceed on the basis that Byron Johnson was arrested on March 27, 1970. Although the motion for a mistrial was denied, the following cautionary instruction was given to the jury during the trial court's charge:

"Now, the defendant was questioned, when he took the stand, about a prior arrest, in 1970. I believe it was March, 1970. The defendant denied that arrest. There was no proof of that arrest. And, therefore, I instruct you that you may not consider whether or not the defendant had an arrest in March, 1970. That has absolutely nothing to do with this case, there was no proof of it, no evidence of it, and it is not to be considered by you and it is to be given no weight whatsoever and no consideration whatsoever."

N.T. 414.

■ Initially, it is clear that the prosecution could properly inquire into appellant's arrest record after appellant's counsel had placed his client's character in issue. As stated by the Act of March 15, 1911, P.L. 20, § 1, 19 P.S. § 711:

"Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—

4. During a meeting in chambers prior to the charge, the prosecutor again insisted that a record of the arrest did exist. A recess was taken to allow time for its procurement, but the detective employed by the Commonwealth could not be located.

One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or,

Two. He shall have testified at such trial against a codefendant, charged with the same offense."

*See also Commonwealth v. Martin,* 465 Pa. 134, 348 A.2d 391 (1975); *Commonwealth v. Smith,* 432 Pa. 517, 248 A.2d 24 (1968).

█ Nevertheless, there are certain constraints on a prosecutor who attempts this form of impeachment. The tactic of inquiring as to prior arrests or convictions cannot be construed as a license to fabricate charges in bad faith as a subterfuge to discredit a defendant's veracity and character. Repeated questions referring to specific arrests or convictions, even if continually denied by the defendant, will have a considerable influence on a jury who must assume that the prosecutor has a factual basis for the allegations. Other jurisdictions have correctly condemned cross-examination concerning prior arrests or convictions unless the prosecution has some basis for the questioning and is prepared to offer proof if the accusations are denied. *See, e. g., State v. Mustacchio,* 57 N.J. 265, 271 A.2d 582 (1970); *State v. Gustafson,* 248 Or. 1, 432 P.2d 323 (1967); *State v. Beard,* 74 Wash.2d 335, 444 P.2d 651 (1968); *McDonald v. State,* 489 P.2d 776 (Okl.Crim.1971).

Our own supreme court has recognized the potential impact on a jury of evidence concerning past convictions and has demanded, *inter alia,* that proof be presented that the present defendant is the same person as that to whom the prior conviction refers.[5] *See Commonwealth v. Boyd,* 463 Pa. 343, 344 A.2d 864 (1975); *Commonwealth v. King,* 455 Pa. 363, 316 A.2d 878 (1974). Thus, it is not inequitable to

5. Proof is also required that the record be authentic. Of course, we are not here dealing with the actual introduction of evidence. Thus, *Boyd* and *King* are not directly apposite. Nevertheless, their recognition of the affect of such evidence on the jury is instructive.

require that a prosecutor possess some basis for referring to specific prior arrests or convictions in an attempt to impeach the witness.

■ Instantly, during the initial questioning of appellant concerning the 1970 arrest, appellant's counsel conceded that such questioning was proper, contingent on the production of evidence substantiating the alleged arrest.[6] Nevertheless, when no verification was produced the next day and the trial judge twice insisted that the "record should at the very least be here," appellant's counsel stated that:

"I don't want to waste any time. I think we could proceed on the basis [that appellant was arrested in 1970]. I know Mr. Dempsey [assistant district attorney] well enough." N.T. 403.

■■ The court then decided that "in those circumstances" it would deny the motion for a mistrial but give the cautionary instruction previously noted. It is clear to us that if appellant's counsel believed the matter of sufficient import, he should have demanded proof at the time of trial rather than stipulate to the existence of the arrest and the good faith of the assistant district attorney. Apparently, counsel did not view the incident as so damaging as to necessitate his supporting the lower court's demand for verification. While he did retain an exception to the denial of the mistrial motion, one cannot remove the cause of the objection and later rescind that acquiescence. It is well settled that the grant of a mistrial is discretionary with the trial judge, and his decision will not be reversed on appeal absent some flagrant abuse of that discretion. *Commonwealth v. Craig*, 471 Pa. 310, 370 A.2d 317 (1977); *Common-*

---

6. Appellant contends in his brief, however, that the questioning was improper not only because of the lack of substantiation, but also because the arrest was remote in time and involved a crime not involving dishonesty, thus violating the balancing test of *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). Such an argument is inapposite. Apart from several factual distinctions, appellant here not only put his character in question, but made the absolute statement that he had never, as either a juvenile or otherwise, been arrested. The Commonwealth was thus entitled to ask if he had previously been arrested for any crime.

*wealth v. Biancone,* 249 Pa.Super. 34, 375 A.2d 743 (1977). Because no bad faith on the part of the prosecutor was alleged or proved, and in light of counsel's stipulation as to the arrest, we find no such abuse of discretion in denying the motion for a mistrial.

Moreover, appellant admits in his brief that proper cautionary instructions would cure any error, assuming, *arguendo,* that the question was improperly admitted. We concur. *See Commonwealth v. Williams,* 470 Pa. 172, 368 A.2d 249 (1977); *Commonwealth v. Brown,* 444 Pa. 318, 282 A.2d 364 (1971). We cannot see how the lower court's charge could have more strenuously admonished the jury not to take the alleged 1970 arrest into consideration. The contention is therefore without merit.

Appellant's second point is based on the following facts. During cross-examination, Roger Jones was twice asked by appellant's counsel if he had ever been known by the name of Roger "Stokes." Jones answered in the negative. Subsequently, other witnesses testified that Jones had indeed been known by the name of "Stokes." After the defense had rested, the Commonwealth was allowed to recall Jones and the following exchange took place between Jones and the assistant district attorney:

"Q. Roger, have you ever been known by any name other than Roger Jones?

A. Roger Stokes.

Q. Were you asked that question on Friday morning by Mr. Gaskins [DEFENSE ATTORNEY]?

A. No.

Q. What was your recollection of what Mr. Gaskins asked you concerning your name?

A. Roger Stukes or Strokes or something like that." · N.T. 372.

In the cross-examination which immediately followed, appellant's counsel inquired:

"Q. When you heard me say, 'Stukes' instead of 'Stokes' why didn't you correct me that time?

A. Because you was wrong and I didn't feel as I had to correct you.

. . . . .

A. You was wrong at that time. You the defendant lawyer. I don't feel that I have to correct you something against me."
N.T. 374.

▮ Appellant contends that allowing the witness to be called as of rebuttal was a clear abuse of discretion mandating a reversal. *See Van Buren v. Eberhard*, 377 Pa. 22, 104 A.2d 98 (1954). We do not agree. The court may recall witnesses, *Wiser v. Parkway Baking Co.*, 289 Pa. 565, 137 A. 797 (1927), or re-open a case, *Commonwealth v. Derembeis*, 120 Pa.Super. 158, 182 A. 85 (1935), at its discretion to correct mistakes or effect a just result. Instantly, the witness testified that he did not hear the initial question concerning the name, and thus the court could allow the recall to correct the mistake. We find no indiscretion here.

▮ Further, appellant was in no way prejudiced by the recall. In his brief, appellant argues strenuously that allowing Jones to be recalled countenanced a transparent attempt by the prosecution to rehabilitate a witness on the feeble pretext that he had not properly heard the questions on cross-examination. While it is of course within the purview of the jury to determine the credibility of witnesses, *Commonwealth v. Bridell*, 252 Pa.Super. 602, 384 A.2d 942 (1978), it appears to us that by recalling the witness and reviewing the prior inconsistencies, the matter was placed afresh before the jury who might easily construe the excuse advanced as at best evasive. The recall could thus quite conceivably be viewed as beneficial to appellant's attempt to discredit the witness. In light of this fact, plus the overwhelming nature of the other evidence presented, any possible indiscretion on the part of the trial judge in allowing the recall was surely harmless. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

The judgment of sentence is therefore affirmed.

CERCONE and SPAETH, JJ., concur in the result.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.