57 N.J. Super. 399 (1959)
154 A.2d 845
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOUIS F. CINIGLIO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 15, 1959.
Decided October 19, 1959.
*400 Before Judges PRICE, GAULKIN and SULLIVAN.
*401 Mr. Edward F. Hamill, Assistant Prosecutor, argued the cause for respondent (Mr. Lawrence A. Whipple, Hudson County Prosecutor, attorney).
Mr. Charles M. Schimenti argued the cause for appellant.
The opinion of the court was delivered by SULLIVAN, J.A.D.
After trial by jury, defendant was convicted of entry without breaking with intent to steal in violation of N.J.S. 2A:94-1, and stealing goods having a value under $200, in violation of N.J.S. 2A:119-2.
Defendant's appeal makes the following points. First, the evidence was insufficient to convict him and the court should have granted his motions for acquittal made at the end of the State's case and again at the end of the entire case. Second, the verdict was against the weight of the evidence. Third, certain remarks and conduct of the prosecutor and one of the State's witnesses during the trial were prejudicial to the defendant. Fourth, defendant was prejudiced by having certain portions of the testimony re-read to the jury. Fifth, conviction of defendant by an 11-man jury is void in the absence of defendant's written consent to be so tried.
The first two points may be considered together since they deal with the proposition whether there was enough evidence at the end of the State's case and at the end of the entire case to submit the issue of defendant's guilt to the jury. An examination of the record indicates that a jury question was presented both at the end of the State's case and at the end of the entire case. Actually, as far as defendant was concerned, the question of his guilt turned on whether he knowingly participated in the commission of a crime. There was no question but that Roy Hansen, defendant's companion, had unlawfully entered a tool shed on the Weehawken waterfront and had stolen some power tools. It is undisputed that defendant drove Hansen to the waterfront, the tools were put in defendant's car, and they then drove to the place where the tools were sold at which time defendant *402 helped to carry the tools from the car. The fact that Hansen, who testified for the State, said that he told defendant that the tools were his and also said that defendant did not know they were stolen, is not of itself conclusive. There were facts presented to the jury from which it could have properly concluded that defendant was a knowing participant in the crime. Without enumerating all of the details from which defendant's guilty knowledge could be inferred, the following are significant. The securing of the tools and their sale took place late at night and under cover of darkness. Defendant drove Hansen to the deserted Weehawken waterfront to get the tools. When a police officer chanced upon defendant parked without lights defendant said he was supposed to meet a friend there. Defendant did not remember whether he said anything to the police officer about tools, but the officer who took defendant's name and address and sent him on his way with a threat of arrest said that defendant did not tell him the purpose of the meeting. As it developed, Hansen while getting the tools was surprised by a watchman and jumped into the Hudson River to avoid detection. After the watchman left, Hansen climbed out of the river, and when defendant did not return, Hansen then walked back to the tavern in Union City from which place they had started. Hansen was "soaking wet" and "draped with mud." He met defendant there and an argument ensued, each wanting to know what had happened to the other. According to Hansen he told defendant, "`I went in the water.' I said, `I saw the cops out there talking to you.'" Despite this, Hansen prevailed on the defendant to drive him back to the waterfront and this time Hansen got the tools.
In investigating the theft the police, who had defendant's name and address, questioned defendant as to his presence in the vicinity at the time of the theft. Defendant repeated his story about waiting for a friend, adding that his friend was going to return a watch to him. Defendant did not mention the tool incident and stated that the officer did *403 not ask about any tools. The officer however testified that he did question defendant about the tools and defendant denied any knowledge of them.
We feel that all of the foregoing was evidence from which a jury could properly conclude that defendant knowingly participated in the commission of the theft. The court properly denied defendant's motions for an acquittal and a new trial. State v. Dancyger, 29 N.J. 76 (1959); State v. Vitale, 35 N.J. Super. 568 (App. Div. 1955).
We have examined the alleged prejudicial remarks and conduct of the prosecutor and State's witness. Without going into detail, we find that the trial judge properly and effectively handled the trial and that defendant's rights were not prejudiced in any way. The case was vigorously presented, but within the limits of propriety. The court in its charge adequately corrected the one misstatement of applicable law made by the prosecutor.
After the jury retired to consider the case it returned and submitted the following question to the court: "According to the testimony by Hansen did he (Hansen) actually tell Ciniglio that he had to jump into the water because of the watchman's presence." When the judge told the jury that it was strictly a matter of "your recollection of the testimony," the jury asked to have that portion of the testimony read back. Thereupon the stenographer read to the jury that part of Hansen's testimony dealing with his return to Union City after climbing out of the river, and his conversation with defendant as to what had happened while he was getting the tools. The reading back of a portion of the testimony was clearly a matter of sound discretion with the trial court. State v. Richter, 21 N.J. 421 (1956). We find that the trial court acted properly under the circumstances.
The final point deals with defendant's conviction by a jury of 11 persons. This situation resulted from one of the jurors becoming ill after the first day of trial.
*404 The transcript of the trial records the event as follows:
"(December 9, 1958 Session.)
(Jury polled.)
Clerk of the Court: Juror Number One is absent, sir.
The Court: The Court was advised this morning earlier that Juror Number One was ill and unable to be present and the name of the doctor was offered for verification. I am satisfied that the lady has made every reasonable effort to attend but that because of her condition, that of illness, she cannot be present. I thereupon took up with counsel for the state and for the defendant the question of going ahead with eleven jurors so that yesterday would not be wasted and a mistrial ordered. Both counsel have graciously consented to proceed with eleven jurors so we will proceed with the case.
Are you ready, gentlemen?
Mr. Schimenti: Yes."
The trial thereupon proceeded to its conclusion and a verdict of guilty was returned by the jury of 11.
Defendant bases his argument on the rule of criminal practice, R.R. 3:7-1(b) which provides as follows:
"(b) Juries of Less than 12. Juries shall be of 12 persons but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12, except in murder cases."
The right of an accused to trial by jury, which historically includes trial by a jury of 12 persons, may be waived, provided the defendant affirmatively and understandingly does so. Edwards v. State, 45 N.J.L. 419 (Sup. Ct. 1883); State v. Stevens, 84 N.J.L. 561 (Sup. Ct. 1913); Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263 (1930). Our Supreme Court, pursuant to the power vested in it by the Constitution to make rules governing practice and procedure in the courts, has adopted R.R. 3:7-1 which specifies procedural requirements for waiver by an accused of trial by jury in whole or in part.
Defendant's argument on this point actually poses two questions. First: Is defendant bound by his counsel's agreement *405 to proceed with 11 jurors? If otherwise bound, does the failure to "stipulate in writing," as required by R.R. 3:7-1(b), nullify defendant's conviction?
Reference to the trial record, supra, indicates that what took place amounted to a stipulation in open court. The defendant was present and made no objection to the agreement entered into by his counsel. Under these circumstances it must be presumed that defendant approved of what his attorney had done. The case of Horne v. United States, 264 F.2d 40 (5 Cir. 1959), so holds in a factual situation very similar to the case at bar. There, while defendant was on trial for bank robbery, a juror became ill and was excused and counsel and the court agreed to proceed with 11 jurors. The record did not indicate that the defendant had personally assented to the action taken. In applying to vacate sentence, defendant urged that he had been convicted by a jury of 11 persons with neither a waiver in writing as required by Federal Rule of Criminal Procedure 23(b), 18 U.S.C.A. nor by him personally. The court refused to consider the failure to comply with the rule as possible error since this was a collateral application and not a direct appeal. As to defendant's contention that he had not personally consented, the court, in affirming the denial of his application had this to say at page 43:
"The requirement of `consent of the defendant' as Patton states it, is not to be measured solely by the absence of a written assent signed by defendant or a categorical oral response. Here the matter was intelligently and deliberately discussed in open court. The Court had every right to conclude that the action openly taken on both occasions by petitioner's counsel, with no protest from petitioner was, as in the usual case, * * * the act of petitioner."
In the case of Cruzado v. People of Puerto Rico, 210 F.2d 789 (1 Cir. 1954), this rule was also applied to a situation basically similar to the case at bar. In that case the defendant appealed his conviction charging that a stipulation, made by his counsel during trial, affected his constitutional rights, and since the trial record did not indicate that he had *406 personally assented to the stipulation, his conviction must be set aside. Judge Magruder disposed of this argument with these comments at page 791:
"When an accused is represented by counsel, it is generally to be assumed that counsel adapts his trial tactics to what in his judgment is for the best interests of the accused. If the accused, being present, manifests no dissent, it is usually fair to assume that he approves of, or at least acquiesces in, the decisions taken in open court in his behalf by his counsel. `* * * The defendant did not complain of such tactics, and he must suffer the consequences of his counsel's action.'"
See also Eury v. Huff, 141 F.2d 554 (4 Cir. 1944).
In New Jersey, as in other states, it is settled that an attorney for a defendant in a criminal proceeding has implied authority to enter into stipulations and agreements as to matters of trial procedure and the defendant is bound thereby. State v. Bentley, 46 N.J. Super. 193 (App. Div. 1957); State v. Mulvaney, 21 N.J. Super. 457 (App. Div. 1952); State v. Graham, 19 N.J. Super. 70 (App. Div. 1952). It is clear that, under the circumstances here present, defendant consented to and was bound by his attorney's agreement to proceed with 11 jurors.
Does the failure to comply with R.R. 3:7-1(b) of itself nullify defendant's trial and conviction? So long as defendant knowingly and understandingly participated in the oral agreement to go ahead with 11 jurors, he has no standing to now claim that such arrangement is not binding on him because it was not in writing. We certainly do not approve of noncompliance with R.R. 3:7-1(b). However, it is clear that the purpose underlying the rule was satisfied and the spirit of the rule was observed. In this instance the procedural irregularity does not vitiate an otherwise fair trial.
In State v. Stevens, 84 N.J.L. 561 (Sup. Ct. 1913), defendant waived trial by jury in a manner other than provided by statute and sought reversal of his conviction on that ground. In rejecting defendant's argument, the Supreme Court stated that the only issue was whether or not *407 defendant had the power to waive trial by jury. The procedure used on the waiver was held not to be a ground for appeal since defendant had agreed to it, the court saying, at page 564:
"We are of opinion that, under the rule established in this court by the cases cited, a defendant who has been indicted for a crime may waive his right to a jury trial and consent that the facts may be determined by a court, which has jurisdiction over the trial and punishment of the crime described in the indictment, and that, as this record shows that the defendant waived a trial by jury and proceeded to a trial before the court without a jury, he has no legal ground to complain of the procedure to which he thus assented."
Under the circumstances here presented defendant "has no legal ground to complain of the procedure to which he thus assented." Our rules are designed to facilitate the orderly administration of justice. Strict adherence to them is not required when injustice would result. On an appellate review, therefore, when it appears that a defendant has had an otherwise fair trial, his conviction will not be set aside because of the failure to observe a procedural requirement of our rules at his trial, where such failure has not prejudiced his rights in any way.
Affirmed.