STATE OF NEW JERSEY, PLAINTIFF-APPELLANT v. LYNWOOD EDGE AND WALTER ROBBINS, DEFENDANTS-RESPONDENTS.

Argued December 21, 1970—Decided February 22, 1971.

*Mr. Wilbur H. Mathesius,* First Assistant Prosecutor, argued the cause for appellant (*Mr. Bruce M. Schragger,* Mercer County Prosecutor, attorney).

*Mr. Daniel R. Coburn,* Assistant Deputy Public Defender, argued the cause for respondent Lynwood Edge (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. John Urato,* Designated Attorney, argued the cause for respondent Walter Robbins (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

The opinion of the Court was delivered by

JACOBS, J. The defendants were convicted of rape and appealed to the Appellate Division. That court, by a vote of two to one, reversed their convictions. *State v. Edge,* 111 *N. J. Super.* 182 (1970). The State appeals to this Court as of right. *R.* 2:2–1(a)(2).

On December 5, 1967 at about 6:30 P.M. the victim, then thirteen years of age, was walking in Hamilton Township towards her girlfriend's home. A car with three men came

alongside, two of the men came out, and they forced her into the car. They drove to a wooded area where she was raped by the three men. She had ample time and opportunity to observe the men when she was originally seized, while she was in the car, and when she was later released. At her release she was resourceful enough and sufficiently controlled to obtain the license number of the car which turned out to be a Cadillac stolen from Mr. Glenn Hobbs, the operator of the Blue Light Restaurant in Trenton. She went to the nearest house, the Hamilton Township police were called and, after they questioned her, she was taken to a doctor's office and later to a hospital.

The Hobbs car was reported stolen during the evening of December 5 and when the police arrived they advised that it had been used in connection with a rape. Later that evening there was talk in the restaurant about the theft of the car and a $200 reward for its return. Two young men in the restaurant advised Mr. Hobbs that they would find his car. They left the restaurant and in very short order returned, told him where the car was located, and one of them, the defendant Lynwood Edge, left his name and address for payment of the reward. Mr. Hobbs then called the police who proceeded to pick up the car in furtherance of their investigation of the rape.

On December 6, which was the day following the evening of the rape, the victim was shown a picture of Robert Edge, an uncle of the defendant Lynwood Edge. She said that he was not one of the attackers although it looked a little like him. At about 9 :45 P.M. on December 6 the Trenton police called Detective Mohr of the Hamilton Township Police Department and told him that they had the defendant Lynwood Edge at their headquarters. The victim and her father arrived at the Trenton headquarters where they met the detective. According to his testimony, he told the victim before she made her identification in his presence that "just because a person she was going to see was in a police station, this did not mean he had anything to do with her rape" and

to be "very sure before she said anything. * * *" And according to the victim's testimony, her father told her about the seriousness of the matter and that before she identified anyone "to be sure and not to make any mistakes." The victim observed the defendant Edge via a one-way mirror, observed him face to face, heard him talk, and made a positive identification of him as one of the three men who had raped her. She testified that at the time she made the out-of-court identification she was absolutely sure and at the trial she made an equally firm in-court identification of him.

On December 6 the victim was shown several photographs and identified a photograph of the defendant Robbins, a friend of the defendant Edge, as one of her attackers. At about 2:25 P.M. on December 7 she, along with her father, went to the Trenton Police Headquarters where she observed Robbins via a one-way mirror and then observed him face to face from a distance of four or five feet. She thereupon made a positive identification of him as one of the men who had raped her and during the trial she made an unequivocal in-court identification of him. The defendant Robbins testified that when the victim confronted and identified him at police headquarters he said, "Girl, please make sure" and that the police thereupon took her from the room. The defendant Edge testified that at the headquarters confrontation between the victim and himself he heard her say "I am not sure. I don't think so" in response to the officer's inquiry as to whether he was one of the men who raped her. This of course was in conflict with the testimony of both the victim and Detective Mohr.

The defendant Edge acknowledged in the course of his testimony that he, along with a friend, William Wiggins, was in the Blue Light Restaurant during the evening of December 5 and that he left his name with Mr. Hobbs. His version was that he knew nothing about the car but that Wiggins knew where it was and that he merely accompanied Wiggins out of the restaurant and stayed out long enough so that Mr. Hobbs would not feel that they had stolen it.

He testified that while they were out they went to see if the car was "still there." On the witness stand both the defendant Edge and the defendant Robbins testified that they were elsewhere at the time of the attacks established by the State's testimony and denied that they had anything whatever to do with the victim's abduction or the attacks on her. But on that score the jury found against them and, since there was ample testimony to support the jury's finding, the ensuing judgments of conviction must stand unless the record shows reversible trial error. *See R. R.* 1:5–3(a); *R.* 2:10–1; *State v. Mustacchio,* 57 *N. J.* 265, 281 (1970).

The majority members of the Appellate Division reversed the convictions below because they entertained the view that the pretrial identification procedure violated the principles expressed in *United States v. Wade,* 388 *U. S.* 218, 87 *S. Ct.* 1926, 18 *L. Ed.* 2d 1149 (1967) and *Stovall v. Denno,* 388 *U. S.* 293, 87 *S. Ct.* 1967, 18 *L. Ed.* 2d 1199 (1967). In *Wade* a defendant who had been indicted and who had counsel was placed in a pretrial lineup for identification purposes without any notice to his counsel. At the trial his counsel moved to strike the in-court identification because of the nature of the pretrial identification. The Supreme Court held that the pretrial lineup in the absence of defense counsel was illegal, that the later admission of the in-court identification was erroneous unless it had a sufficient untainted independent origin, and that if the in-court identification had no such origin its admission was cause for reversal unless shown to have been harmless. *See State v. Mustacchio, supra,* 57 *N. J.* at 269. In *Stovall* the Supreme Court recognized that a pretrial identification may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to amount to a denial of due process though it found, from the totality of circumstances before it, that no such unconstitutional pretrial identification had taken place. *See State v. Mustacchio, supra,* 57 *N. J.* at 271.

Both *Wade* and *Stovall* were decided over nine months before the trial in the case at hand began, and their princi-

ples were familiar to defense counsel who evidently concluded that the interests of the defendants would best be served by complete exploration of the pretrial identification procedure. They voiced no objections at all when the victim fully described her pretrial identifications or when she made her firm in-court identifications. And when the defendants were on the witness stand they gave their full versions as to what happened at the pretrial identifications. In his answering brief before us, the appellate attorney for Robbins disputes the State's suggestion that the absence of objection at trial should be deemed on appeal to represent trial counsel's "considered judgment" and he asserts that the State's suggestion is "contradicted by the record" though we find no such contradiction whatever. Along with its reply brief the State submits affidavits by both of the defense counsel at the trial who assert that they were familiar with *Wade* and its companion cases, that they discussed them before the victim gave any identification testimony, and that it was their considered opinion that objection should be withheld since they wanted the circumstances surrounding the identifications to be presented to the jury. A motion has been made before us to strike the affidavits because they were never "passed upon by the courts below" but it is denied since the affidavits may appropriately be considered in connection with the very limited appellate argumentation purpose for which they have been tendered.

In viewing defense counsels' handling of the matter at the trial, various factors must be borne in mind. The situation differed sharply from *Wade* since here the pretrial identifications occurred within a day or two after the event while the investigation was still intensely under way and well in advance of any indictment or retention or assignment of counsel. The Supreme Court did not pass on any such preindictment situation in *Wade* nor has it to date. *See State v. Mustacchio, supra,* 57 *N. J.* at 269–270. Nor did the Supreme Court in *Stovall,* or in any other case to date, hold that a one-to-one pretrial confrontation and identifica-

tion is without more violative of the fourteenth amendment. On the contrary, it held that the totality of the circumstances must be considered to determine whether the manner of the confrontation was so unnecessarily suggestive and unfair as to amount to a denial of due process. *See State v. Mustacchio, supra,* 57 *N. J.* at 271–272, 276.

The opinions handed down by this Court both before and since *Wade* and *Stovall* would lend support to the position that here the totality of the circumstances surrounding the pretrial identifications displayed a procedure which was neither unfair nor unnecessarily suggestive. *See State v. Mustacchio, supra,* 57 *N. J.* at 272–276; *State v. Simmons,* 52 *N. J.* 538, 542–543 (1968), *cert. denied,* 395 *U. S.* 924, 89 *S. Ct.* 1779, 23 *L. Ed.* 2d 241 (1969); *State v. Sinclair et al.,* 49 *N. J.* 525, 544–546 (1967); *State v. Matlack,* 49 *N. J.* 491, 498–499, *cert. denied,* 389 *U. S.* 1009, 88 *S. Ct.* 572, 19 *L. Ed.* 2d 606 (1967); *State v. Williams,* 39 *N. J.* 471, 489, *cert. denied,* 374 *U. S.* 855, 83 *S. Ct.* 1924, 10 *L. Ed.* 2d 1075 (1963), 382 *U. S.* 964, 86 *S. Ct.* 449, 15 *L. Ed.* 2d 366 (1965). And, though the issue did not come up at the trial because of the absence of any objection by defense counsel, the nature of the victim's in-court identifications as evidenced by the record would lend support to an appellate finding that they were sufficiently independent of the pretrial identifications. *See State v. Royster,* 57 *N. J.* 472 (1971); *State v. Woodard,* 102 *N. J. Super.* 419, 425 (*App. Div.*), *certif. denied,* 53 *N. J.* 64 (1968), *cert. denied,* 395 *U. S.* 938, 89 *S. Ct.* 2004, 23 *L. Ed.* 2d 453 (1969).

In any event, we need not pursue the foregoing because we are satisfied that the defense, by failing to make objection to any of the identification testimony at the trial, is in no just position to make objection on appeal; that accords with the view expressed by Judge Sullivan in his dissenting opinion below. 111 *N. J. Super.* at 189. The overall subject has been dealt with comprehensively in the recent opinion of the Chief Justice in *State v. Macon,* 57 *N. J.* 325 (1971). There the prosecutor's summation con-

tained remarks which the defendant contended were erroneous and infringed on his constitutional right to counsel. But at the trial the defendant made no objection and on appeal the Appellate Division found no plain error. In the course of his opinion affirming the Appellate Division, the Chief Justice took occasion to deal generally with the significance of the omission of objection at trial. He pointed out that in our practice a claim of trial error first raised on appeal, including a constitutional claim, "will not be dealt with as would be a timely challenge." He listed the various reasons noting, among other matters, that rerunning a trial when the error could have been cured on timely trial challenge, "would reward the litigant who suffers an error for tactical advantage either in the trial or on appeal." And he stressed that "if upon a timely objection a different or further record might have been made at the trial level, and the claim of error might thereby have been dissipated, we will neither reverse on an assumption that there was error nor remand the matter to explore that possibility."

We have no reason to doubt that if objection to the identification testimony had been made at the trial of the defendants Edge and Robbins, a different record would have been made. The trial judge undoubtedly would have conducted a suitable court hearing to determine whether the pretrial identifications were improper and if so whether they would taint in-court identifications. *See* 111 *N. J. Super.* at 189; *State v. Woodard, supra,* 102 *N. J. Super.* at 424; *cf. State v. Mustacchio, supra,* 57 *N. J.* at 273. For their own tactical reasons defense counsel chose to have the trial proceed without any such court hearing and they may not fairly seek it now. The full trial record contains no indication that there was any miscarriage of justice and there is no sound reason for appellate consideration, under a claim of plain error, of the defendants' objection to the identification testimony, first advanced by them on appeal. *See State v. Macon, supra,* 57 *N. J.* 325; *cf. State v. Corby,* 28 *N. J.*

106, 108 (1958) ; *State v. Haines*, 18 *N. J.* 550, 565 (1955) ; *State v. Picciotti*, 12 *N. J.* 205, 211 (1953).

We come now to the additional claims of trial error raised in the separate briefs submitted on behalf of the defendants Edge and Robbins. Both defendants complain that the trial judge's charge omitted reference in specific terms to the "presumption of innocence" and to their so-called "defense of 'alibi' ". *See State v. Peetros*, 45 *N. J.* 540, 543–45 (1965) ; *State v. Garvin*, 44 *N. J.* 268, 272–275 (1965). But it is clear from the record before us that the omissions could not have played any prejudicial part in the jury's verdict. The evidential disputes and the respective contentions by the State and the defendants were uncomplicated and, in the light of the trial judge's instructions, the jury could not have been misled. Thus on four separate occasions during the course of his brief charge, the judge told the jury that it was the State's obligation to prove beyond reasonable doubt that the defendants were guilty of the charge of having committed rape on the victim, and that the defendants were entitled to acquittal if the jury was not satisfied that the State had established its accusations beyond reasonable doubt. He explicitly told the jury that the burden of proving its case was always on the State and that "[t]hat burden never shifts." Putting it in other words he told the jury that it was not incumbent on the defendants to prove that they were not guilty but that it was the duty of the prosecutor to satisfy the jury of the defendants' guilt. And at the very close of his charge, the judge said: "I repeat again that if you are not satisfied that the State has proved beyond a reasonable doubt the guilt of the defendants, either one or both, your verdict should be one of not guilty."

In their openings to the jury, both counsel for the defendants specifically mentioned the presumption of innocence. One of them referred to "[t]he presumption of law that any person who is accused of a crime must be presumed to be innocent until such time at the conclusion of the case that

you have been convinced beyond a reasonable doubt." The other recalled to the members of the jury that when they were sworn in they promised to give his defendant "the same fair and impartial consideration, same benefit of the presumption of innocence and of reasonable doubt as you would expect if you were placed in his unfortunate position of having to stand trial for a criminal charge." In his opening to the jury the prosecutor said nothing which would in anywise conflict with the presumption of innocence or the State's obligation to establish its case beyond reasonable doubt. While the charge should have included the customary reference to the presumption of innocence, we are satisfied that its omission was nonprejudicial. Furthermore there was no request at trial that it be charged nor any objection at trial to its omission and the authorities generally hold that under such circumstances there is no error "at least, if an instruction on the question of reasonable doubt is given." 5 *Wharton's Criminal Law and Procedure* § 2100 (*Anderson Ed. 1957*).

The transcript of the trial does not disclose that defense counsel submitted any request to charge on the subject of alibi or objected to the trial court's failure to refer to it in its charge. However, affidavits by trial counsel were submitted on appeal and we assume therefrom that the trial court was requested to charge on the subject of alibi but omitted to do so. As we indicated earlier, we are convinced that the omission was harmless and did not impair the justness or legality of the jury's finding of guilt. The matter was considered fully in *State v. Garvin, supra,* 44 *N. J.* 268, where this Court held that the trial judge had not committed reversible error by failing to charge specifically on the subject of alibi. It is true that in that case there had been no request to charge but the Court's opinion spoke in broader terms. It pointed out that in truth "alibi" is not a separate defense but is simply part of the defendant's general denial of guilt and that it need not be singled out for special instructions to the jury. And it contained

the following comment of particular import here: "There is no need to speak of alibi in such separate terms, and indeed to do so will more likely obscure the case than clarify it. The important thing is to make it plain to jurors that to convict they must be satisfied upon a consideration of all of the evidence that guilt has been established beyond a reasonable doubt." 44 *N. J.* at 274. Applying the foregoing to the actual circumstances in the case at hand, it is evident that although it would have been wiser for the trial judge to have honored the request to charge, his failure to do so may not on appeal be considered as error, let alone prejudicial error calling for reversal. *Cf. State v. Peetros, supra,* 45 *N. J.* at 543–545.

■■ No further points of error are set forth in Edge's brief but two additional points are set forth in Robbins' brief. They assert (1) that the trial court erred in allowing Edge's counsel "to testify on his client's behalf" and (2) that Robbins was denied "the effective assistance of counsel at the trial." The first of the two points relates to an occurrence during the presentation of Edge's defense. Edge's counsel had called William Wiggins as a defense witness. Wiggins testified flatly that he knew the three men who had stolen the Hobbs car and that they did not include either Edge or Robbins. He said that he had talked and walked with the three men, but incredibly insisted that he did not know whether they were white persons or Negroes. However, there was an overnight recess and when he continued his testimony during the following morning he finally acknowledged that they were Negroes. Wiggins denied on cross-examination that he ever told anyone that Robbins was one of the three men who had stolen the car. At this juncture Edge's counsel indicated to the trial court that he was surprised by the testimony and wanted to neutralize it (Evidence Rule 20). There was no objection and Edge's counsel was permitted, also without objection, to ask Wiggins whether Wiggins had not told him earlier that Robbins was one of the men who took the car. Wiggins denied that he had.

Edge's counsel then took the witness stand and testified without objection that Wiggins had told him that he knew the three individuals who had taken the car. He then said that Wiggins had identified the driver as Robbins and at that point Robbins' counsel said "I object, your Honor. That is hearsay." Without any court ruling or further objection, Edge's counsel continued with his testimony, largely to the effect that Wiggins had said he knew the three men who took the car but had refused to identify them. Robbins now contends that "the trial judge erred in allowing counsel to testify in the matter" and he refers to the precedents in our State which have expressed condemnation of trial counsel testifying on his client's behalf. *See Callen v. Gill,* 7 *N. J.* 312, 317 (1951); *Pierce v. Yaccarino,* 72 *N. J. Super.* 252, 261–262 (*App. Div.* 1962); *cf.* Canon 19. But the condemnation has not been extended to complete rejection of such testimony (*Callen v. Gill, supra,* 7 *N. J.* at 317) and here there was no objection when counsel took the witness stand. More troublesome was the reference in the testimony of Edge's counsel to Robbins which should have been stricken. But there was no motion to strike and Robbins' counsel did not press for any ruling on his objection. In any event we agree with Judge Sullivan's opinion that the matter was nonprejudicial. He dealt with it in the following summary fashion: "Defendant Robbins' contention that he was prejudiced by the testimony of Edge's attorney is contradicted by the fact that the jury also found Edge guilty. Obviously this 'neutralizing' testimony was not a factor in the jury's verdict." 111 *N. J. Super.* at 190.

In the final point, Robbins contends that he was denied the effective assistance of counsel. He criticizes the summation although an examination thereof indicates that it was adequate. He also criticizes the various omissions of objections which appear however to have been in good part tactical. The State asserts that Robbins' counsel was a deputy public defender who had tried many criminal cases, and was an experienced criminal lawyer. It urges, and we

agree, that in any event such deficiencies as are disclosed by hindsight did not approach the type of ineffectiveness which would call for reversal because of inadequate legal representation. *See State v. Dennis,* 43 *N. J.* 418, 427–429 (1964); *State v. Bentley,* 46 *N. J. Super.* 193, 203 (App. Div. 1957); *see also State v. Woodard, supra,* 102 *N. J. Super.* at 429: "A conviction, otherwise valid, will be reversed on appeal because of the ineffectiveness or inadequacy of counsel only if what he did, or failed to do, is of such magnitude as to thwart the fundamental guaranty of a fair trial. *State v. Dennis,* 43 *N. J.* 418 (1964). Putting it another way, to warrant reversal, defense counsel must have been so incompetent as to make the trial a farce or mockery of justice. *Rivera v. United States,* 318 *F.* 2d 606 (9 *Cir.* 1963); *State v. Bentley,* 46 *N. J. Super.* 193 (*App. Div.* 1957)."

Reversed, with direction that the defendants' convictions be reinstated in full.

FRANCIS, J. concurring in result.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.