113 N.J. Super. 563 (1971)
274 A.2d 605
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILBUR JORDAN, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FREDERICK E. WALLACE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 1970.
Decided March 11, 1971.
*565 Before Judges LEWIS, MATTHEWS and MINTZ.
Mr. Mark E. Feinman, designated counsel, argued the cause for appellant Jordan (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Donald G. Targan, assigned counsel, argued the cause for appellant Wallace.
Mr. Arthur V. Guerrera, Assistant Prosecutor, argued the cause for respondent (Mr. Robert N. McAllister, Jr., Atlantic County Prosecutor, attorney; Mr. Ernest M. Curtis, Assistant Prosecutor, of counsel and on the brief).
PER CURIAM.
Defendants were each convicted, after a joint trial, of armed robbery. Both appealed, and although the appeals were not consolidated, we treat the questions raised in both appeals in this opinion, which shall be filed as the opinion of the court in each case.
The facts adduced at trial disclosed that Wallace and Jordan entered the Brass Rail Bar in Atlantic City approximately ten minutes before the robbery occurred. They wandered around for a few minutes and then each ordered a beer. The bartender, Patten, who testified at the trial, poured and served the beers and engaged the two "in quite a conversation." Thereafter, Wallace approached Patten who was in front of the cash register, showed him the butt end of what he believed to be a gun, and said, "I want the money and I am not kidding." Patten placed all the money in the cash register on the bar and Wallace and Jordan took all they could and ran out the door. Patten then grabbed a telephone which was the property of a taxicab *566 company and asked the dispatcher to send the police. Policemen arrived in less than five minutes and set out in search of the two robbers as soon as Patten had given them "fast" descriptions. Within five to ten minutes the police returned to the bar with Wallace who was identified by Patten who said, "that is the man."
At the request of the police, Patten went to Atlantic City police headquarters after he finished work at 8 A.M., where he again identified Wallace as one of the robbers. At this identification, Wallace was not in the lineup but was brought into a room where a police clerk was taking Patten's statement; as defendant was brought near the clerk's desk, Patten volunteered the identification. Patten also identified certain items of clothing as belonging to defendant Wallace. Patten, in testifying about his identification of Wallace, stated it was not based upon the fact that the police officers brought Wallace to the bar, but rather because he "had much time to observe Mr. Wallace and know what he looked like." Patten described Wallace as wearing a very thin-pointed, well-shaped beard, a cast on his right arm, a three-quarter length black leather or simulated leather coat, dress slacks, a hat, a sweater, and shined shoes.
Sergeant Callender of the Atlantic City police testified that when he received the radio dispatch describing the robbers, he began searching the area and when he entered the Place Bar, which is located a block and a half from the Brass Rail, he saw Wallace who was wearing blue trousers, brown shoes, a tan sweater, a cast on his right arm, and a mustache growing into a goatee. Callender testified that he had known Wallace for at least seven years and that he had seen him earlier that day dressed as described by Patten. Callender stated that as he entered the Place Bar, Wallace "immediately started toward a door" until ordered to halt. After frisking him, Callender noticed Jordan who was also in the Place Bar and determined that he fit the description of the other man who had committed the robbery at the Brass Rail. Jordan was ordered to remain where *567 he stood. Callender then ordered a barmaid to call for assistance. At this point, Jordan smashed his way through a locked door and escaped.
On the evening following the robbery, Patten was again summoned to police headquarters where he identified Jordan who stood in a lineup comprised of four or five other men. According to Patten, he could not remember how the other men looked, but remembered that "Mr. Jordan stood out very well."
Both Wallace and Jordan testified on their own behalf at trial and each denied any participation in the crime.
On this appeal both defendants argue that the trial court erred in denying their motions to dismiss the indictments on their challenges to the array of the grand jury and, further, in denying their requests to hold evidentiary hearings on their challenges to the array; they also claim that each should have been acquitted at the end of the State's case of count two of the indictment against him because the State failed to establish that the robbery was perpetrated with a gun. Finally, both defendants argue that the identification of each of them was unconstitutionally, impermissibly suggestive under United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).
The first argument dealing with the challenge to the array may be dispensed with summarily. Both defendants, in their briefs to this court, have informed us that an evidentiary hearing on a challenge to the same array was held on April 27, 28 and 30, 1970 before Judge Horn, the assignment judge of Atlantic County, in the case of State v. Dickerson, et al., Indictment No. 611-68-M, et al. Both defendants agree that they should be bound by the facts adduced at that evidentiary hearing, and the decision of Judge Horn in the Dickerson case. Since the filing of the briefs on behalf of each defendant, Judge Horn has filed his opinion in Dickerson in which he rejected the challenges.
Defendants also challenge the sufficiency of proof with respect to count two of each indictment which charged *568 each defendant with the use of a gun during the perpetration of the robbery in violation of N.J.S.A. 2A:151-5. The only evidence in the State's case with respect to the use of a weapon during the robbery was the testimony of Patten, the bartender at the Brass Rail, who was the actual victim. Patten testified that "Wallace showed me the back end of a gun beneath the cast and asked me to give him money." In view of this testimony, the question of whether or not a gun was used was for the jury. The jury apparently believed Patten. We cannot substitute our judgment for theirs. State v. Johnson, 42 N.J. 146 (1946).
Finally, we deal with the identification questions raised by both defendants. In Wallace's case we conclude that the identification procedures there fall within the principles established in State v. Thomas, 107 N.J. Super. 128 (App. Div. 1969). Within minutes after the robbery, defendant Wallace, who had been more than adequately described to the police by Patten, was brought into Patten's presence and identified. The second identification which took place at police headquarters the following morning was superfluous, from a due process point of view, in view of the positive identification made by Patten the night before.
Jordan was identified in a lineup approximately 24 hours after the robbery. Patten was positive in his identification, claiming that Jordan "stood out very well." We have little other information about the constitution of that lineup. The question we deal with here is whether Jordan, having waived his right to cross-examine and produce evidence to controvert the State's witnesses and evidence pertaining to his identification at trial (although a voir dire on the issue had been conducted out of the presence of the jury), should be permitted to prevail in his quest for reversal of his conviction solely on the theory that he did not have counsel during the pretrial lineup. State v. Macon, 57 N.J. 325 (1971); cf. State v. Edge, 57 N.J. 580 (1971).
In United States v. Wade, above, the Supreme Court held that a post-indictment lineup is a critical stage of prosecution *569 at which the accused is entitled to legal representation. Although the court has not extended this finding, lower federal courts, in anticipation of such an extension, have held that there is a similar right to counsel at pre-indictment confrontations as well. See, e.g., Long v. United States, 137 U.S. App. D.C. 311, 424 F.2d 799 (1969); Rivers v. United States, 400 F.2d 935 (5 Cir.1968), and United States v. Kinnard, 294 F. Supp. 286 (D.D.C. 1968). Compare, however, United States v. Venere, 416 F.2d 144 (5 Cir.1969); United States v. Davis, 399 F.2d 948 (2 Cir.1968), cert. den. 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449 (1969), and Bratten v. Delaware, 307 F. Supp. 643 (D. Del. 1969).
Our courts have consistently declined to determine the applicability of the Wade rules to pre-indictment lineups, or have limited their holdings in applying Wade rules to the specific facts of the case under review. See e.g., State v. Mustacchio, 57 N.J. 265 (1970); State v. Sinclair, 49 N.J. 525 (1967); State v. Matlack, 49 N.J. 491 (1967), cert. den. 389 U.S. 1009, 88 S.Ct. 572, 19 L.Ed.2d 606 (1967); State v. Edge, 111 N.J. Super. 182 (1970), rev'd. 57 N.J. 580 (1971), and State v. Thomas, above.
In Thomas, we stated that we were not holding that the right to counsel did not exist in pre-indictment identification proceedings, but based on the facts of the case we concluded that defendant was not prejudiced by the absence of counsel. Among the facts which led us to our conclusion was the proximity of the time of commission of the crime and the time of confrontation of defendant and victim.
Under the facts of this case, it can hardly be said that the identification of Jordan by Patten could be considered to be "on the scene." It is not, however, the proximity in time of the occurrence of a crime and the identification confrontation which is the sole criterion in determining whether defendant should have been provided with counsel. The test of criticality is a functional test, based upon the Wade postulate that possible prejudice to the accused *570 must be weighed against countervailing policy considerations. 388 U.S. at 237, 87 S.Ct. 1926. We suggest that such countervailing policy considerations should not be limited merely to situations temporally and physically "on the scene."
There is nothing in this record which indicates that Jordan's identification was unduly suggestive and constituted a singling out of his person for the benefit of the victim, thus making it "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The record before us discloses quite clearly that Patten knew Jordan to be one of the perpetrators of the crime against him as soon as he saw him. In addition, Jordan, who had been described by Patten, was identified by Sergeant Callender as having been in Wallace's company at the Place Bar immediately after the robbery, and having fled arrest. Under these facts, we cannot conclude that Jordan was denied due process.
The judgments of conviction are affirmed.