116 N.J. Super. 538 (1971)
283 A.2d 127
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LUIS MORALES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1971.
Decided October 22, 1971.
*539 Before Judges GOLDMANN, COLLESTER and MINTZ.
Mr. Henry Ramer argued the cause for appellant (Mr. Stanley C. Van Ness, Pulbic Defender, attorney; Mr. Samuel N. Poritz, designated counsel, on the brief).
*540 Mr. John A. Brogan, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General, attorney).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Defendant, together with Hector Diaz and Francisco D. Marrero, were indicted for armed robbery and tried together. The trial judge dismissed the charges against Marrero, declared a mistrial as to Diaz, and the jury found defendant guilty as charged. The judge thereafter sentenced defendant to serve consecutive State Prison terms of 10-15 years for robbery and 4-5 years for being armed. This appeal ensued.
Defendant first claims error in the method used in selecting the jury, particularly addressing himself to the omnibus questions asked by the judge. We find no error.
At the opening of the trial the judge presented the defendants, witnesses and lawyers to the jury panel. The trial judge asked detailed questions as each juror in the first panel took his place in the box. After the first peremptory challenge the judge asked each new prospective juror whether he had heard the detailed questions earlier propounded, and when the answer was in the affirmative, the judge asked, "Is there any information you want to give us now?" Where there was no response, the juror was seated. The second panel was selected in a like manner, although defense counsel objected to the manner of questioning. When the third panel was called the judge again presented to that panel all defendants, witnesses and lawyers. He also asked if anyone on the panel was related to a member of any law enforcement agency; whether anyone on the panel or member of his family or close relation had been convicted of a crime; whether there was any reason why he could not serve as a juror and render a verdict according to the evidence and the law, the charge being robbery while armed, and whether he felt he could sit and act as an impartial juror.
*541 During the voir dire the following question was put to the third panel by the judge: "Luie [sic] Morales is represented by Kalman Geist. Are you clients of his? Or, do you know him?" There was no response. Later it developed that juror Steinforth was biased against defense counsel. He was excused by the court, defense counsel stating, "I don't think, if I had conducted the voir dire instead of the Court that I would have illicited [sic] the information either." After Steinforth was excused counsel stipulated that he accepted the 11-member jury. However, after the jury had retired to discuss its verdict, defense counsel moved for a mistrial on the ground that there was not a 12-member jury. The motion was denied.
Defendant claims error in the voir dire because some of the jurors were not asked a single question personally after they were seated in the jury box. Although at one time the general rule was that examination of jurors on voir dire should be made of each juror individually and not as a group, Springdale Park v. Andriotis, 30 N.J. Super. 257, 263 (App. Div. 1954), the adoption of R. 1:8-3(a) in the 1969 revision of the rules significantly changed the former practice under R.R. 3:7-2(b) and 4:48-1, respectively dealing with the examination of jurors in criminal and civil actions.
R. 1:8-3(a) provides, in pertinent part:
For the purpose of determining whether a challenge should be interposed, the court shall interrogate the prospective jurors in the box after the required number are drawn without placing them under oath. The parties or their attorneys may supplement the court's interrogation in its discretion. * * *
The omnibus questions put by the court in this non-capital case were allowed under that rule, whose purpose is to eliminate a time-consuming voir dire by giving the trial judge a greater responsibility for questioning. State v. Manley, 54 N.J. 259, 282 (1969). The court there said that not only would the preliminary questioning by the neutral judge *542 be more likely to produce a truly impartial jury but, in addition, it would avoid the unreasonable expanse of protracted jury examination and serve the interest of jurors by conserving their time and energy and eliminating unwarranted intrusion into their personal affairs. The interest of the public, the courts, counsel and jurors would be served. The court added that if the purpose of R. 1:8-3(a) was to be accomplished, the trial judge would have to exercise considerable restraint over any supplementary questioning by counsel.
The burden is on the complaining party to establish that the mode of conducting a voir dire prejudiced him. Springdale Park v. Andriotis, above, 30 N.J. Super. at 265. Defendant has failed to establish prejudice.
In this connection, defendant suggests that the voir dire resulted in the temporary seating of juror Steinforth who, it was soon revealed, was biased and therefore dismissed. It is claimed that this presented an opportunity for him to communicate his bias to the other jurors, to defendant's prejudice. There is nothing to show that Steinforth ever communicated his bias during the short time he was in the jury box; indeed, when the judge asked the jury whether there had been such communication as to the reason for the juror's dismissal, the response was negative.
Defendant further contends that the trial judge's failure to question members of the third panel after they were in the jury box violated R. 1:8-3(a), quoted above, and therefore constitutes reversible error. True, the procedure followed did not strictly comply with the rule, but the judge's failure to follow the rule was no more than harmless error. All the jurors selected had earlier heard the detailed questions posed by the judge and responded that they could make an impartial judgment. Additionally, defense counsel's objection was directed to the lack of individual questioning, not to the fact that the third panel jurors were not in the box when questioned.
Defendant's second main point is that the trial judge erred in not granting the motion for mistrial because the *543 jury had been reduced to 11 members. R. 1:8-2(a) provides that juries "shall consist of 12 persons but at any time before verdict the parties may stipulate that the jury shall consist of any number less than 12," except in the trial of a crime punishable by death where the prosecutor has not elected to waive the death penalty. The rule also provides that, "Such stipulation shall be in writing and with the approval of the court." As noted, the trial judge discovered that a prejudiced juror had been impanelled and dismissed him. Upon inquiring of the parties whether they would continue with and accept a verdict of 11 jurors, defendant's counsel stipulated acceptance of such a jury. It was not until two days later, after the jury had retired to deliberate its verdict, that counsel moved for a mistrial because there were less than 12 jurors.
Defendant's claim of error is misdirected. Defendant would have it that he could waive his right to a 12-man jury but later, and at the last moment, recall that waiver and ask for a mistrial. That contention is repugnant to the very concept of waiver, namely, the intentional abandoning or relinquishing of a known right. See East Orange v. Board of Water Comm'rs, 41 N.J. 6, 17 (1963). And see State v. McKnight, 52 N.J. 35, at 48 (1968), where, in discussing the doctrine of waiver in another setting, the court observed that "there must be order in the judicial process, and constitutional rights may be lost if they are not advanced in accordance with rules which afford a fair opportunity to press them." Defense counsel's attempt to renege at the last moment on a stipulation made at the very start of the trial was untimely.
Defendant presses his contention relative to the ineffectiveness of the stipulation because it had not been reduced to writing pursuant to R. 1:8-2(a). In State v. Ciniglio, 57 N.J. Super. 399, 407 (1959), we held that the failure to reduce a stipulation to writing under R.R. 3:7-1(b) did not nullify defendant's trial and conviction so long as defendant *544 knowingly and understandingly participated in the oral agreement to go ahead with 11 jurors. As in that case, so here: it is clear that the purpose underlying the rule was satisfied and its spirit observed.
Defendant further contends that evidence of his identification by the robbery victim was improperly admitted because obtained in violation of his constitutional rights. The defense did not object to either the out-of-court or in-court identification. The matter is therefore raised under the plain error rule, R. 2:10-2. In State v. Edge, 57 N.J. 580, 588 (1971), the court stated that where the full trial record contains no indication of any miscarriage of justice, there is no sound reason for appellate consideration, under a claim of plain error, of defendant's objection to identification testimony, first advanced on appeal. We find no miscarriage of justice.
Defendant claims that the out-of-court identification procedure by which the victim identified defendant was unduly suggestive and violated his due process rights under the Fifth Amendment, citing Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and State v. Edge, 111 N.J. Super. 182 (App. Div. 1970). (He does not refer to the later reversal in Edge.) The rape victim in Edge identified her assailant the day following the evening of the rape, when she observed him at police headquarters through a one-way mirror. The Appellate Division majority held that the pretrial identification violated the principles expressed in Stovall, and reversed the conviction. Our Supreme Court, in reinstating the conviction, 57 N.J. 580 (1971), said:
* * * Nor did the Supreme Court in Stovall, or in any other case to date, hold that a one-to-one pretrial confrontation and identification is without more violative of the fourteenth amendment. On the contrary, it held that the totality of the circumstances must be considered to determine whether the manner of the confrontation was so unnecessarily suggestive and unfair as to amount to a denial of due process. [at 586-587]
*545 In this case the victim had known defendant for more than a year before the robbery. Defendant frequented his restaurant and he had been seen by the victim on the day of the robbery. When he saw the accused at the scene of the crime, the victim could readily identify him by name (his nickname). He saw and identified defendant at police headquarters soon after. We find that the out-of-court identification procedure followed was not impermissibly suggestive so as to give rise to a substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); State v. Mustacchio, 57 N.J. 265 (1970).
Defendant claims that he was entitled to a line-up at the time of the out-of-court identification. The absence of such a procedure does not in itself make the prior identification unfair or unreliable, for it is the totality of the circumstances that must be considered. State v. Matlack, 49 N.J. 491, 498 (1967). The court in that case stated that a prior identification made proximate in time to the criminal act does not require a line-up to sustain its validity. Ibid; State v. Sinclair, 49 N.J. 525, 545 (1967). The victim here identified defendant within five hours of the offense. A line-up was not necessary in the circumstances of this case.
Defendant also insists that he was entitled to be represented by counsel when the victim identified him at the police station. The matter was not raised below. We find no plain error. Cf. State v. Mustacchio, above, at 269 et seq.
Arguing on the basis of the inadmissibility of the out-of-court identification, defendant contends that the victim's in-court identification was tainted and therefore inadmissible. There are two answers to this argument. The first is that we have held that the testimony as to the out-of-court identification was properly admitted in evidence. The second is that the in-court identification testimony was based on the victim's independent observations. Defendant has referred us to United States v. Wade, 388 U.S. 218, 87 S.Ct. *546 1926, 18 L.Ed.2d 1149 (1967). Footnote 33 at page 241, 87 S.Ct. at page 1940 of that opinion should have been consulted by defense counsel. The Supreme Court majority there observed that how well the witness knew the suspect would have an important bearing upon the true basis of the witnesses' in-court identification. As has already been indicated, the victim in our case knew defendant well enough to make an identification independent of that made at the police station, and the trial judge so stated.
Finding no error and concluding that defendant had a completely fair trial, we affirm.