117 N.J. Super. 83 (1971)
283 A.2d 744
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT LEE HARRIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1971.
Decided November 9, 1971.
*85 Before Judges KILKENNY, LABRECQUE and LANE.
Mr. Francis J. DeVito, designated attorney, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. R. Benjamin Cohen, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
PER CURIAM.
Defendant was found guilty by a jury of robbery, N.J.S.A. 2A:141-1. On April 29, 1970 he was sentenced to the State Reformatory at Yardville, a maximum of seven years to apply. He timely appeals.
Defendant contends: (1) the admission of the in-court identification of him by the victim was reversible error because it was the product of an out-of-court identification which was a denial of due process; (2) the court erred in not permitting him to call his mother as an alibi witness. *86 thereby depriving him of due process of law; (3) the court committed plain error in not specifically charging the jury on "alibi," and (4) the court misled the jury as to what the contentions of the defense were.
On June 21, 1969, at approximately 9:50 P.M. to 10:15 P.M., Mr. Britt Hendrickson was standing in front of the Adams Theater in Newark. He had been in Perth Amboy, where he had had a few beers, until about 8:45 P.M. and then had come by automobile to Newark. As he was looking across the street at the Branford Theater, he was pulled to the ground from behind by three colored males. He was struck in the face by two of the men, while the third  a Negro in a white coat  went through his pockets and took his wallet containing $105. The lights of the marquee were on. Hendrickson testified that he could clearly see the face of this third man. As a result of the attack, Hendrickson was rendered unconscious and was hospitalized for a number of days thereafter.
Officer James Brackin was on duty in the area of the incident at the time of its occurrence. After making his 10:30 P.M. call into headquarters, the officer was approached by a pedestrian. As a result of what this man told him, the officer proceeded towards the Adams Theater. Another passer-by approached him and his attention was directed across the street to a Negro male in a white coat. This proved to be defendant.
Officer Brackin called for assistance on his walkie-talkie and then followed defendant through a crowd on Broad Street and into a pizzeria. There the defendant was apprehended and placed under arrest. The officer took defendant back to the scene of the robbery where Hendrickson still lay unconscious. After an ambulance arrived for the victim, defendant was taken to the First Precinct where he was searched. Nothing of an incriminating kind was found in his possession. He gave his name as Robert Johnson, 17 years of age, and also told the police his social security *87 number. All this was false. His correct identification, name and age, were ascertained the next day. There was no record of the social security number given.
At the trial in the County Court a voir dire hearing, out of the presence of the jury, was held concerning the identification procedure. Hendrickson testified thereat that he had been called to come to the Municipal Court about a month and a-half after the incident. The courtroom that day was "full of colored." While he and his wife were sitting there, defendant was brought in by "a white man." Hendrickson immediately recognized defendant as the man who had gone through his pockets. He was asked by the judge in the Municipal Court if he recognized defendant and he answered in the affirmative. When asked if he had had any doubts, he responded:
No, sir. I wouldn't forget him, not that face over me, and going in my pockets.
The trial judge held all testimony concerning identification admissible, apparently finding the identification at the Municipal Court proper and the in-court identification at trial not tainted. In the judge's words:
The court is satisfied that, neither the out-of-court or the Magistrate's Court identification, or the in-court identification, are tainted.
During direct examination before the jury Hendrickson identified defendant as one of his assailants. Nothing was elicited by the prosecutor concerning the Municipal Court identification. This was, however, brought out by defendant's attorney on cross-examination.
Defendant asserts that at his arraignment, on September 22, 1969 in the County Court, he was not represented by counsel. At that time a demand was made upon him for a bill of particulars if he intended to rely on the defense of alibi. However, such a bill was never delivered by him or on his behalf. Rather, a letter was sent from the Public *88 Defender's Office to the Prosecutor's Office approximately four months prior to trial. This stated that "the defendant may rely on the defense of an alibi. The alibi witness is Mrs. Doris Harris, 151 Clifton Avenue, Newark, New Jersey [defendant's mother]." It was defendant's contention that he was with his mother, sister, and nephew and one Lloyd Harris at his cousin's house in the evening of the day of the robbery. They allegedly left at about 10:15 P.M., at which time he was driven to Broad and Market Streets, in Newark. This is only a short distance from the scene of the crime. He walked over to get some pizza in a restaurant when he was arrested. Defendant's mother was offered as a witness at the trial to establish the fact that they were at the cousin's until 10:15 P.M. and then they drove defendant to Broad and Market Streets, where he alone left the car.
The State objected to the mother's testimony on the ground that R. 3:11-1 had not been complied with. After argument on the issue, the court disallowed alibi testimony by defendant's mother.
Defendant testified in his own behalf. He denied participation in the crime. He contended that he gave a false name and age, because he was warned that they (the police) would beat him up if he was an adult.
Defendant's cousin, Shirley Jones, testified that defendant and others had been at her house that evening; however, she did not know what time they left. A Doris Adams testified as a character witness.

I
Was the in-court identification of defendant the product of an improper out-of-court identification? This is the first question to be answered.
Defendant places reliance upon the fifth amendment due process requirement. As pointed out by Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 1199 (1967), and subsequent cases, where identification is based upon improper *89 suggestive procedures, it will be inadmissible. Such determination must be made by viewing the identification in the totality of the circumstances. Id. at 302, 87 S.Ct. 1967. It must be considered whether the "identification procedure was so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). See also State v. Edge, 57 N.J. 580, 586-587 (1971); State v. Mustacchio, 57 N.J. 265, 271-272 (1970).
In the instant case we find no such impropriety. The confrontation here, though one-to-one, was in no way suggestive. Immediately, upon defendant's being brought into the municipal courtroom  which was crowded with other Negroes  Hendrickson recognized defendant. This recognition was totally spontaneous and free of any external pressures. When called upon by the Magistrate, Hendrickson merely gave voice to his earlier recognition. The trial court was justified in finding that this "identification" was a product of the victim's familiarity with defendant by reason of the happening on the night of the robbery, rather than any untoward procedure.
Defendant also attacks the identification on the ground that he was denied his sixth amendment right to counsel. This is, of course, in reliance upon the rule set forth in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). There it was held that a post-indictment line-up is a critical stage of the criminal process which requires representation of an attorney.
The United States Supreme Court has not decided specifically whether this rule encompasses pre-indictment situations. (It is interesting to note that Stovall v. Denno involved a pre-indictment situation, yet the issue never entered the court's consideration.) Nor has our Supreme Court ruled on the issue. See State v. Edge, 57 N.J. 580, 586 (1971); State v. Mustacchio, 57 N.J. 265, 269-270 (1970). *90 Courts in various jurisdictions have reached differing views. See cases cited in Mustacchio, supra, at 270. Compare State v. Jordan, 113 N.J. Super. 563 (App. Div.), certification denied 58 N.J. 338 (1971), with State v. Earle, 112 N.J. Super. 523 (App. Div. 1970), certification granted 57 N.J. 602 (1971).
In Earle, the court held that a defendant under arrest and in police custody is entitled to counsel at a confrontation. In Jordan, the court, in affirming the conviction, found that the mere fact that defendant was in custody at the time of the line-up did not require presence of counsel. A functional test was there emphasized which would weigh "possible prejudice to the accused * * * against countervailing policy considerations." 113 N.J. Super. at 569-570.
In light of the witness' unequivocal identification of defendant, his proximity to him, and the excellent lighting conditions at the time of the offense, it is reasonable to find that the victim's identification stems from his first encounter with defendant and not from the subsequent confrontation.
We note, too, that the State limited its evidence on identification and the defense brought out the pretrial identification before the jury on the cross-examination of Hendrickson.

II
We next consider whether the trial court committed reversible error when it refused to permit defendant's mother to testify as an alibi witness.
R. 3:11-1 provides that if a defendant intends to rely upon the defense of alibi, upon demand by the prosecutor, he must furnish the prosecutor with the specifics of that defense including the contentions and witnesses. R. 3:11-2 provides:
If such bill of particulars is not furnished as required, the court may refuse to allow the party in default to present witnesses at *91 trial as to defendant's absence from or presence at the scene of the alleged offense, or make such other order or grant such adjournment as the interest of justice requires.
The purpose of this rule is to avoid the sudden introduction of factual contentions at trial which cannot be investigated without a recess. State v. Garvin, 44 N.J. 268, 272-273 (1965). It seeks to do away with previous "unfairness in criminal trials of a surprise alibi." State v. Baldwin, 47 N.J. 379, 388 (1966). Similar rules are in effect in most, if not all, jurisdictions, and their constitutionality has been repeatedly upheld. See Williams v. Florida, 399 U.S. 78, 80-86, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); State v. Angeleri, 51 N.J. 382, certiorari denied 393 U.S. 951, 89 S.Ct. 372, 21 L.Ed.2d 362 (1968).
At the time of the arraignment (September 22, 1969), defendant was served with the requisite demand which he acknowledged. It is contended that defendant was not represented by counsel prior to this acknowledgement. There is no indication whether defendant had waived his right to counsel at this time, or whether he understood the demand. However, on November 7, 1969, a letter was sent from the Public Defender's office indicating that alibi might be a defense, and merely giving the name and address of the witness. Detective O'Hare of the Prosecutors Office sent a letter to the person named but made no further inquiry. He allegedly was awaiting formal compliance with the earlier demand.
The response by the defense attorney indicates that he was aware of the demand; and, it would thus not be unreasonable to consider the demand effective. However, it must be considered whether the exclusion of the particular "alibi" testimony by the trial judge was an abuse of discretion.
Normally, the rule applicable to the defense of "alibi" is applied strictly. Annotation, "Notice of Alibi," 30 A.L.R.2d 480 (1953). However, in State v. Baldwin, 47 N.J. *92 379 (1966), in a somewhat comparable situation, a demand from the defense attorney was misplaced in the prosecutor's office and never answered. The court pointed out that the State had not refused to disclose the witnesses and defense could have readily obviated the problem by a pretrial motion to compel the State to answer. Rather, as the court expressed it, "the defense chose to sit back in the hope of gaining some advantage at trial." Id. at 390.
In State v. Nunn, 113 N.J. Super. 161 (App. Div. 1971), after holding that circumstantial witnesses were contemplated in R. 3:11-1, this court held that there was no clear abuse of discretion in excluding certain alibi testimony in light of the surrounding circumstances. The defense counsel had been aware of the witnesses' existence more than two weeks prior to trial. See also State v. Woodard, 102 N.J. Super. 419, 426 (App. Div.), certification denied 53 N.J. 64 (1968); certiorari denied 395 U.S. 938, 89 S.Ct. 2004, 23 L.Ed.2d 453 (1969).
Other jurisdictions have had opportunity to treat this issue. In State v. Martin, 2 Ariz. App. 510, 410 P.2d 132 (Ct. App. 1966), it was held that there was no abuse of discretion in the trial court's exclusion of alibi testimony because of non-compliance with the disclosure rule. Defendant had made an offer of proof at the trial. The court stated that for alibi to be an effective defense it must be shown that defendant was so far from the place of the alleged crime that he could not with ordinary exertion have participated in the crime. 21 Am. Jur.2d, Criminal Law, § 136 (1965). The court found that the evidence presented did not meet this standard and thus there was no abuse in excluding it.
By way of contrast to strict compliance with the rule, see Founts v. State, 483 P.2d 654 (Nev. Sup. Ct. 1971). There, defendant orally informed the prosecutor prior to trial that he intended to call an alibi witness. However, the trial judge disallowed the testimony in that no written notice had been timely submitted giving the specifics. The Supreme Court of Nevada reversed. Under their rule, such evidence *93 was admissible "upon good cause shown." They noted that the prosecutor had had time to investigate and was not surprised; the evidence directly controverted the State's case. "[S]trict compliance should not be blindly required if the end result will make the criminal prosecution a game." Id. at 656. Accord: Commonwealth v. Shider, 209 Pa. Super. 133, 224 A.2d 802 (Super. Ct. 1966).
Likewise, in the instant case it is difficult to appreciate the State's claiming any surprise. The prosecutor had been aware of the one potential witness upon whom defendant would rely if he was going to urge the defense of alibi. The ambiguity of defendant's notice that he might rely on the defense is understandable in light of the tenuousness of the evidence. Moreover, even had the notice been explicit, the prosecutor would have been in no better position since defendant would not be bound to this defense. The trial judge should have permitted defendant to present this evidence. (It should also be noted that the judge refused to permit an offer of proof.)
The question, however, is whether the error was reversible. Would the mother's testimony, in fact, amount to an effective alibi defense? Could the mother's testimony, if believed, exculpate defendant? The time of the robbery was set at between 10 P.M. and 10:30 P.M. The intended testimony was to be that defendant, his mother and others, had left the cousin's house at approximately 10:15 P.M. and traveled to Broad and Market Streets (apparently 15 minutes from the cousin's house). At that point, defendant got out of the car alone. The Broad and Market Street intersection is only about a block and a-half from the Branford Theater and less than two blocks from the Adams Theater  a three minute walk at best. The mother could not place defendant once he left the car. The time sequence is close but not precise. The mother's testimony could not have reasonably exculpated defendant. It would have placed him close to *94 the scene of the robbery and probably there at the critical time, as testified to by the victim and the police officer. Thus, we conclude the exclusion was not reversible.

III
The court did not err in failing to instruct the jury on the specific issue of alibi. No request to charge as to the defense of "alibi" was made and no exception was taken to the court's instructions to the jury. Moreover, it has been held that alibi is not a "separate" defense which requires a specific charge to the jury. State v. Edge, 57 N.J. 580, 590 (1971); State v. Garvin, 44 N.J. 268 (1965). Thus, there was no error in this regard.

IV
Nor did the court mislead the jury was to what the contentions of the defense were. In its charge the trial court indicated that it was going to reiterate the contentions of both defendant and the State. This was done. Defendant's attorney claimed that the trial judge failed to indicate the "highly suggestive nature" of the identification. The court refused to recharge after this was noted. We find no error in this ruling.
The trial judge had indicated that he was stating the facts as he recollected them. The defense attorney had had ample opportunity to set forth defendant's contentions in summation. Reliance was placed essentially on the matter of identification. The omission by the judge as to this matter was not reversible error.
The judgment of conviction is affirmed.