Commonwealth *v.* Shider, Appellant.

Argued November 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*George B. Stegenga,* for appellant.

*William D. Phillips,* Assistant District Attorney, with him *Harold V. Fergus,* District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, J., December 16, 1966:

On September 10, 1965, Willard Shider was indicted by the Grand Jury in the Court of Quarter Sessions of Washington County on a charge of indecent assault. Timely notice was filed under Pa. R. Crim. P. No. 312 of the intention to offer the defense of alibi. This notice set forth the names and addresses of two witnesses. The trial judge refused to permit Shider's wife to testify in support of the alibi on the ground that her name had not been listed as a witness in the notice. The jury returned a verdict of guilty. Motions in arrest of judgment and for a new trial were dismissed, and sentence was imposed. This appeal followed.

Appellant's first and principal contention is that the refusal of the trial judge to permit his wife to testify as to the alibi defense constituted reversible error. The issue thus raised requires an interpretation of Pa. R. Crim. P. No. 312 which is set forth in the foot-

note.[1]   It will first be necessary to briefly summarize the trial record.

Mrs. Elizabeth M. Bitzer, a widow 80 years of age, testified that she lived alone in a third floor apartment in Charleroi.   Access to this apartment was by means of two flights of stairs.   On the evening of June 6, 1965, Mrs. Bitzer was returning from a visit to the office of her physician.   She stopped on the sidewalk near her apartment and talked with a neighbor, Mrs. Angeline Ferrarri.   This conversation terminated "between quarter after ten to twenty after".   Mrs. Bitzer then started up the stairs.   On the second flight she was accosted by a man who "grabbed me and held me up under my dress".   When she entered her apartment after the incident, Mrs. Bitzer looked at her clock and the exact time was 10:35 P.M.   Mrs. Ferrarri testified that she noticed a man follow Mrs. Bitzer into the apartment building, heard Mrs. Bitzer scream, and

---

[1] "(a) When a defendant intends to offer the defense of alibi at trial, he shall at any time before or after indictment but not later than five days before trial, file notice with proof of service on the attorney for the Commonwealth, specifying his intention to claim such defense and giving the place where he will claim to have been at the time of the alleged offense and the names and addresses of the witnesses he intends to call in support of such claim.

"(b) Unless the interests of justice require it, on a defense of alibi a defendant may not call any witness not named in such notice, or any witness on an alibi different from that alleged in the notice.

"(c) A defendant may himself testify concerning an alibi notwithstanding he has not filed notice, but if he has filed notice and testifies concerning his presence at the time of the offense at a place different from that specified in his notice, he may be cross-examined concerning such notice.

"(d) No adverse inference may be drawn against a defendant, nor may any comment be made concerning his failure to call available alibi witnesses, where such witnesses have been prevented from testifying by reason of this rule, unless the defendant or his counsel shall attempt to explain such failure to the jury."

then saw the man drive away in a station wagon. Mrs. Mary Pazinski, who resided on the second floor of the apartment building, heard Mrs. Bitzer scream and saw a man get in the station wagon. All three ladies identified the man as Willard Shider.

Mrs. Gloria Jean Shider was permitted to testify only that she lived with her husband and young daughter in Belle Vernon, three and one-half miles distant from Charleroi, and that her husband was employed at the Allenport Mill, a distance of five miles in a somewhat different direction. Mrs. Katherine Allessio testified that the Shiders lived "right in back of me"; that at 10:30 on the evening of June 6, 1965, after watching the Candid Camera program on television, she went outside and saw Mr. and Mrs. Shider come out on their porch; that Mr. Shider was dressed in his work clothes and was carrying a lunch bucket; that she had a conversation with him; and that Mrs. Shider stood on the porch and watched her husband drive away. Mario Caluppo, an employe of the Pittsburgh Steel Company, testified that Willard Shider's time clock card indicated that he had arrived at work on June 6, 1965, at 10:48 P.M.

In considering the issue involved we must be mindful of the provisions of Pa. R. Crim. P. No. 2 relating to purpose and construction. It is therein stated that the rules are intended to provide for the just determination of every criminal proceeding. It is not without significance that paragraph (b) of Rule No. 312 provides that a defendant may call a witness not named in the alibi notice if the interests of justice require it. The underlying purpose of the rules is not to create a game, but to insure a fair trial from the standpoint of both the defendant and the Commonwealth. As noted in the comment of the Criminal Procedural Rules Committee, Rule No. 312 is intended to enable the Common-

wealth to make a preliminary investigation of the truth or falsity of the proposed alibi.

In the case at bar the appellant did list in the alibi notice the name and address of his neighbor, Katherine Allessio. As previously indicated, Mrs. Allessio testified that appellant's wife stood on the porch and watched her husband drive to work. It is clearly apparent that the refusal to permit Mrs. Shider to support the alibi, and to corroborate Mrs. Allessio's testimony, was highly prejudicial. The jurors could readily have inferred from the wife's failure to testify that the alibi was not worthy of belief. The record does not disclose the reason for not listing the wife's name in the notice. It has been suggested that, due to their traditional relationship, a wife should be permitted to testify as to her husband's presence in the marital abode. Appellant's counsel may have felt that paragraph (c) of the rule, permitting the defendant himself to testify without notice, was broad enough to cover the defendant's wife. Howbeit, we are of the opinion that, under the circumstances of the instant case, the wife should have been permitted to testify, and that a new trial is required in the interest of justice.

It should be noted that, had Mrs. Shider been permitted to testify, the Commonwealth would not have been prejudiced in any degree. The spirit of the rule had been met. The district attorney had full notice of the alibi. He was provided with the information required to make any investigation deemed necessary. No element of surprise was involved. Surely it could have been expected that Mrs. Shider would testify in favor of her husband. Our decision is expressly limited to the instant factual and procedural situation. It in no way conflicts with our recent decision in *Commonwealth v. Vecchiolli*, 208 Pa. Superior Ct. 483, 224 A. 2d 96, wherein the manner in which the trial judge applied

the sanction of Rule 312 was held to be entirely reasonable.

Appellant's second contention is that the trial judge erred in refusing to affirm four points for charge on the question of identification. These points contained brief and proper statements of relevant legal principles. They might well have been affirmed, if for no other reason than to obviate an appeal based on their refusal. The trial judge took the position that the points presented had been covered sufficiently in his general charge. It is unnecessary for us to determine this issue.

Judgment reversed with a venire.

MONTGOMERY, J., would affirm on the opinion of the court below.