## Commonwealth *v.* Bobko, Appellant.

Submitted December 13, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Malcolm J. Gross,* Assistant Public Defender, for appellant.

*Thomas J. Calnan, Jr.,* Assistant District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 30, 1972:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal from appellant's conviction and sentence for armed robbery. Appellant raises a number of issues in this direct appeal, one of which I find to be meritorious.

Appellant's first contention is that the trial court erred in refusing to grant his motion for severance. The basis for this argument is that the evidence against a co-defendant, Edward Strohl, rested in large part upon the testimony of Strohl's girl friend, who testified that Strohl had admitted to her his planning and participation in the crime. Upon appellant's motion, the lower court instructed the jury that such testimony should only be used as against Strohl and not against appellant or his other co-defendant. Appellant's present argument is that the jury could not keep an open mind with respect to his guilt once they had heard Strohl's admissions.

Appellant, however, failed to object to these admissions on the basis of *Bruton v. United States,* 391 U.S. 123 (1968), which held that it was improper to allow the admissions of one defendant to be used against another defendant where the second defendant did not have an opportunity to confront the first defendant by cross-examination. At the time of the girl friend's testimony, appellant could have raised a *Bruton* objection, because at that time it would not have been known whether Strohl would take the stand and thereby allow himself to be cross-examined. Strohl, however, did testify in his own behalf and consequently, appellant

did have an opportunity to cross-examine him. Therefore, appellant cannot now complain of a *Bruton* violation. Accordingly, the denial by the trial court of appellant's motion for severance was not an abuse of discretion. *Commonwealth v. Bruno,* 203 Pa. Superior Ct. 541, 201 A. 2d 434 (1964).

Appellant's second contention is that the court erred in denying his motion for a change of venue based upon an article that appeared seven months before trial in the Allentown Sunday Call-Chronicle. The article detailed thirty crimes in which appellant was allegedly involved. The only basis for a reversal on this issue would be in the pre-trial publicity was "so inflammatory and biased in factual presentation as to cause, or be evidence of, public prejudice or hysteria". *Commonwealth v. Dessus,* 214 Pa. Superior Ct. 347, 354, 257 A. 2d 867 (1969). There is no indication in the record, however, that the jury was influenced by this pre-trial publicity.

The only other major issue raised by appellant concerns the trial court's denial of appellant's pre-trial motion "to challenge the panel of the jurors on the grounds that prejudicial matter to the defendants has been distributed to them . . . in the form of the trial booklet wherein it sets forth that they are currently under indictment for additional charges—that is, the charges additional to the ones for which they are being tried at this time."

This motion was brought after the jury was sworn, but before the taking of testimony. The trial court summarily denied the motion without explanation. It was conceded that a trial booklet listing appellant's other outstanding and unrelated charges was distributed to the jury before it was empaneled.[1] This practice was

---

[1] In all fairness to the trial court, it should be noted that at the time of trial it was apparently the custom in Lehigh County,

condemned by us in *Commonwealth v. Trapp*, 217 Pa. Superior Ct. 384, 272 A. 2d 512 (1970), and we noted in footnote 2 of *Trapp* that distributions to juries of prejudicial trial lists "has [since] been discontinued" in Lehigh County.

As was stated in *Trapp*: "this information 'might well have prejudiced [appellant] by predisposing the jurors to believe the accused guilty, thus, effectively stripping him of the presumption of innocence'." 217 Pa. Superior Ct. at 387, 272 A. 2d at 513. Then, as is true in the instant case, we noted in *Trapp*: "[t]he prejudice to the defendant was further aggravated by the fact that the booklets listed other burglaries charged against codefendant. Jurors are very likely influenced by the maxims of guilty by association and 'birds of a feather flock together'. Almost inevitably, appellant would be tarred with the same brush as the codefendant. The intrusion into the trial of other alleged crimes raised issues to which appellant could not realistically present a defense. Clearly, appellant's association with the other charges and with codefendant tended to show that he was guilty of other crimes and effectively stripped him of the presumption of innocence". 217 Pa. Superior Ct. at 387, 272 A. 2d at 514.

The trial court, in its opinion written following the post-trial motions, stated, however, that its denial of the pre-trial motion was predicated on the belief that such motion was (a) not meritorious and (b) not timely filed pursuant to the provisions of Pennsylvania Rule of Criminal Procedure 1104(b) and (c), which provide that "[u]nless opportunity did not exist prior thereto, a challenge to the array shall be made not later than five days before the first day of the week the case is

---

as was the case in *Commonwealth v. Trapp*, 217 Pa. Superior Ct. 384, 272 A. 2d 512 (1970), which also arose in Lehigh County, to distribute trial booklets to members of the jury panel.

listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, specifying the facts constituting the ground for the challenge. A challenge to the array may be made only on the ground that the jurors were not selected, drawn or summoned substantially in accordance with law".

In its discussion, the trial court indicated that a motion for mistrial was the proper defense motion, and that absent the bringing of such a proper motion, relief was not to be made available to the appellant and his co-defendants. Further, the trial court suggested that appellant "overlook[ed] the use of the voir dire to determine actual prejudice".

With respect to the efficacy of using the voir dire to determine whether the jury had been prejudiced against the appellant and his co-defendants, it would have been impossible to rigorously question the jury panel concerning this matter without drawing to the jury's attention that the trial booklet contained information damaging to the appellant. In such circumstances it is probable, therefore, that unless the jury were completely discharged, more harm than good would have resulted from a voir dire examination such as the lower court suggested.

Further, the fact that appellant sought relief by bringing a motion to challenge the jury panel instead of a motion for mistrial is not material. First, insofar as a motion for mistrial would have been timely, if made at the time that the challenge to the jury panel was made, there is no reason for the trial court to deny relief to the appellant on the basis that the challenge to the jury panel was not timely. Second, even if the motion to challenge the jury panel was improperly framed, the trial court still recognized the true thrust

of appellant's pre-trial objection and should have passed on the merits of such objection.

Rule 2 of the Pennsylvania Rules of Criminal Procedure provides in relevant part that the Rules are "intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustified expense and delay and as nearly as may be in consonance with the rules of statutory construction". In other words, as was stated by President Judge WRIGHT, speaking for this Court in *Commonwealth v. Shider*, 209 Pa. Superior Ct. 133, 136, 224 A. 2d 802, 804 (1966) ; "[t]he underlying purpose of the rules is not to create a game, but to insure a fair trial from the standpoint of both the defendant and the Commonwealth".

I would therefore, on the basis of the principles set forth in *Trapp,* vacate the judgment of sentence and grant appellant a new trial.

SPAULDING and CERCONE, JJ., join in this dissenting opinion.